Statement.

# Richmond.

## W. J. Shuster v. Virginia Railway and Power Company.

March 18, 1926.

Absent, West, J.

1. Last Clear Chance—*Burden of Proof—Injury at Crossing—Case at Bar.*—One relying on the doctrine of last clear chance has the burden of proving affirmatively by a preponderance of evidence that by the use of ordinary care after his peril was discovered there was in fact a last clear chance to save him. In the instant case, an action by a pedestrian for injuries at a street railway crossing, instead of the plaintiff's danger being apparent, even though the motorman had kept a lookout, the evidence showed there was nothing in the conduct of the plaintiff to indicate that he was in a position of peril until the moment of impact.

2. Crossings—*Injury to Pedestrian at Crossing—Contributory Negligence of Plaintiff—Physical Facts—Case at Bar.*—In the instant case, plaintiff was injured by a street car of defendant at a street crossing. Plaintiff testified that he looked both ways as he approached the track and did not see the street car which struck him. This evidence, however, seemed incredible in view of physical facts. Had he looked, when looking would have been effective, he must have seen the approach of the car that struck him. In the opinion of the Supreme Court of Appeals, the facts of the case clearly demonstrated that the plaintiff, in the full possession of his faculties, and in his hasty endeavor to board the automobile of a friend, without causing an instant's delay, failed to exercise any care whatever for his welfare, and his sole negligence was the proximate cause of the accident.

Error to a judgment of the Court of Law and Chancery of the city of Norfolk, in an action of trespass on the case. Judgment for defendant. Plaintiff assigns error.

*Affirmed.*

The opinion states the case.

*S. M. Brandt* and *Moses Ehrenworth*, for the plaintiff in error.

*Williams, Loyal & Tunstall*, for the defendant in error.

Campbell, J., delivered the opinion of the court.

This is an action of trespass on the case, filed by the plaintiff, W. J. Shuster, against the defendant, to recover damages for personal injuries received by the plaintiff in being struck by a street car owned and operated by the defendant.

There was a verdict for the plaintiff, which the trial court set aside upon the ground that it was not warranted by the evidence and was without evidence to support it; and pursuant to section 6251, Code of 1919, entered judgment in favor of the defendant, and thereupon the plaintiff assigns error.

The plaintiff, on the date of the accident, was employed as a locomotive engineer by the Virginian Railway, at a place in Norfolk known as Sewall's Point. Plaintiff lived near Atlantic boulevard, on the eastern side of the defendant's street railway line, which was double-tracked. The car tracks of the defendant run north and south over Atlantic boulevard; Sussex Place crosses the boulevard at right angles. Plaintiff was familiar with this crossing, having crossed the same over a hundred times, and having resided in the neighborhood thereof for about a year and a half.

On the night of the injury, about ten o'clock, plaintiff attempted to cross the tracks of defendant to join his train conductor and drive with him in the latter's automobile to his work. He had crossed the north-bound track and was upon the southbound track,

when he was struck by a car headed south. There is no question but that he was painfully injured. It was the custom of plaintiff to watch for a light signal from the conductor, then cross the tracks and board the automobile while the same was in motion. It appears in evidence that there was a hedge about three and a half feet high, growing on both sides of the tracks.

The plaintiff testified that as he approached the railway tracks he looked in both directions, and saw a street car approaching from the south, but saw no street car approaching from the north, the direction from which the car came that struck him; that he was also required to, and did, keep a lookout straight ahead to avoid being struck by any automobiles turning from the boulevard into Sussex Place. Just what occurred in this connection is thus described by plaintiff:

"I was standing on this corner—that is my corner of the street, when I saw the automobile coming. I did not want to go across the crossing because the traffic was thick and he always threw the door of the automobile open, and never came to a full stop. I walked across the street and I saw the car approaching this way (not the car that struck him), and I looked and did not see no car until I heard a confusion and that is the last I knew. I was knocked I don't know where.

"Q. Did you or not look, as I understood you to say, before you started across the track at all?

"A. Yes, sir; I absolutely looked and I did not see no car and heard no sound."

On cross-examination the following took place:

"Q. At the time you were on the northbound track, and at the time you were in the space between the northbound track and the southbound track, was there anything to have prevented you seeing a south-

bound car approaching had you looked? Do you understand that question?

"A. Sure, I understand the question.

"Q. Well, will you answer it?

"A. I can't see what he is trying to get at. He wants me to get up and say 'Yes, I could have seen it.'

"Q. I want you to say the truth.

"A. I am telling the truth.

"Q. Was there or not?

"A. When I crossed the street car track I looked in both directions, and I didn't see but one street car, and that is the one going north. What obstructed my vision at that present moment, I couldn't answer the question no more than what I have.

"Q. Mr. Shuster, the trouble is you say when you crossed the street car track, from the point you say you did look until the point you got struck is fifteen or twenty feet, or more, and I want to know if you looked in that space? In other words, where were you standing the last time you looked to the north?

"A. Somewhere when I was crossing the track. I got hit so quick, that is all I can tell you.

"Note: The last question asked is read.

"A. I looked when I was crossing the track. I can't tell you the exact feet where I was and no man can tell you the exact feet. When you cross a street crossing or any crossing you look.

"Q. I am going to ask you one more question, which is the same question I asked you before, and if you will answer it, answer it; and if you don't, don't. From the time you passed the southeast corner, where you say you looked to the north and to the south, until the time you were struck by the street car, did you look again towards the north, or not?

"A. When I crossed the street car track, as near as

my observation went, when I walked across and hit the track I looked both ways.

"Q. Did you look again after you started across the track?

"A. I wouldn't swear to no man I looked again, because I was looking across ahead of me. I didn't want to run into an automobile, or hedge, or something of that kind. I walked across the track, and I looked, but to tell you whether I stopped in the middle of the block I can't say that I did. When I start across I go across.

"Q. Without looking again?

"A. Yes, sir."

The two main grounds of recovery are: First, the defendant was negligent in operating its street car over a public crossing at a greater rate of speed than six miles per hour, in violation of the city ordinance; second, that the motorman operating the street car had a last clear chance to avoid striking the plaintiff.

In view of the conclusion reached, it is not necessary to advert to the first ground of alleged negligence. To defeat a recovery in any event the defendant relies on the contributory negligence of the plaintiff. The rule of law that the verdict must stand where the jury have passed upon all conflicts in the evidence is well settled.

The real issue is, was the trial court justified in entering up judgment for the defendant?

That the trial court entertained the view that the accident was the result of the concurrent negligence of plaintiff and defendant is evidenced by the following instruction:

"The court instructs the jury that if they believe from the evidence that both the plaintiff and defendant were guilty of negligence that concurred to cause the accident, they should find for the defendant."

[1] This view of the case is, we think, inevitable.

The question of last clear chance was not urged in the trial court, and even if it had been, the plaintiff has not borne the burden imposed upon him by law. "One relying on the doctrine of last clear chance has the burden of proving affirmatively by a preponderance of evidence that by the use of ordinary care after his peril was discovered there was in fact a last clear chance to save him." *Ashby* v. *Virginia Ry. & Power Co.*, 138 Va. 310, 122 S. E. 104. Instead of the plaintiff's danger being apparent, even though the motorman had kept a lookout, the evidence shows there was nothing in the conduct of the plaintiff to indicate that he was in a position of peril until the moment of impact.

To maintain his contention that the issue is one of fact to be determined by the jury, the plaintiff relies on the case of *Virginia Ry. & Power Co.* v. *Oliver*, 133 Va. 342, 112 S. E. 841. While we strictly adhere to the doctrine laid down in that case, we do not think it applicable to the instant case.

In the *Oliver Case* there was a demurrer to the evidence. In sustaining the demurrer the court said: "It seems to us that a very fair view of the plaintiff's evidence is this: At a short distance from the crossing, as he says, 'as close as to stop in case a car was approaching,' he looked east for a reasonable distance, then looked west, and, seeing no car, 'kept straight on.' This is what the ordinarily prudent driver does at a crossing. Of course, it is true that the car was quite near when he actually went on the track, but he could not look east and west and straight ahead all at the same time, and he had, as every driver at such a crossing has, three avenues to watch. The car undoubtedly caught him in a few seconds after he looked

east, but street railway crossings in cities usually must be made in seconds, and if the car had been running at a lawful speed he would have crossed in safety. His horse was across, and in perhaps a second more the wagon would have cleared the track."

It thus appears in the former case that the plaintiff was called upon to make his decision within the time limit of seconds; that the accident occurred on a crowded city street. In the instant case, the plaintiff had minutes at his disposal, and his view was unobstructed for a distance of seven hundred feet. While it is true the plaintiff says he looked both ways as he approached the track and did not see the street car which caused the accident, this evidence seems incredible in view of the physical facts. Had he looked, when looking would have been effective, he must have seen the approach of the car.

In *Washington Southern Railway Co.* v. *Lacy*, 94 Va. 460, 26 S. E. 834, it is said: "The mere fact of looking and listening is not always a performance of the duty incumbent upon the traveler, for he must also exercise care to make the act of looking and listening reasonably effective. He must not approach the track at such a rate of speed that when he reaches a point where he can see or hear the train it is too late to protect himself from injury. He must exercise ordinary care in attempting to cross or in crossing the track, and care is never ordinary care unless it is proportionate to the known danger."

[2] Much space has been devoted by counsel, in their briefs, to a discussion of the principles of law applicable to crossing cases, sometimes denominated the *per se* and the *non per se* rules. It is not essential to a decision of the instant case to attempt a discussion of the doctrines. In our opinion, the facts of this case clearly

demonstrate that the plaintiff, in the full possession of his faculties, and in his hasty endeavor to board the automobile of the conductor, without causing an instant's delay, failed to exercise any care whatever for his welfare, and his sole negligence was the proximate cause of the accident.

The judgment of the trial court is plainly right, and will be affirmed.

*Affirmed.*