# 𝔚𝔶𝔱𝔥𝔢𝔟𝔦𝔩𝔩𝔢.

K. NICHOLSON v. P. F. GARLAND.

June 18, 1931.

Present, Prentis, C. J., and Campbell, Epes and Browning, JJ.

.The opinion states the case.

*F. C. Bedinger* and *Irby Turnbull,* for the plaintiff in error.

*Ozlin & Ozlin,* for the defendant in error.

BROWNING, J., delivered the opinion of the court.

This case is here on a writ of error to a judgment of the Circuit Court of Mecklenburg county. P. F. Garland, the plaintiff in the trial court, sued K. Nicholson, defendant, by notice of motion for injuries to himself and his car, alleging damages in the sum of $3,000.00. The parties will be referred to as plaintiff and defendant, the relation borne by them in the trial court.

The case was heard upon the said notice of motion, the plaintiff's bill of particulars required to be filed by the court, the defendant's plea of the general issue, his grounds of defense and plea of contributory negligence on the part of the plaintiff and the testimony of witnesses for each of the litigants.

The trial was had at the June term of the court, 1929, and the jury found for the plaintiff and assessed his damages at the sum of $1,000.00.

The issues grew out of an automobile collision which happened in the town of Chase City, in Mecklenburg county, Virginia, on Sunday morning the second day of December, 1928,

about 10 o'clock, at or near the center of the intersection of Fifth and Endley streets. The two streets cross each other or intersect nearly at right angles, Fifth street extending east and west and Endley street extending north and south through the said town.

The plaintiff was going into Chase City along Fifth street in an easterly direction and the defendant was traveling in a southerly direction along Endley street and the cars collided or came together near the center of the intersection of the two streets.

The plaintiff's car was driven by himself and the only other occupant was his thirteen-year-old son, Floyd Garland, who sat beside him. The defendant was driving his car, his wife occupying the front seat with him, and Miss Anna Proud, sister of the defendant's wife, was sitting on the rear seat.

The plaintiff suffered painful injuries from the said collision, necessitating medical and surgical treatment for an extended period. The injury to his third right-hand finger was pronounced by his physician to be permanent.

As the result of the collision the plaintiff's car veered to the right and passed over a vertical piece of iron pipe, which was driven in the ground to guard or protect an iron hydrant, which was on the right side, going east, of Fifth street just over the portion of the street where the sidewalk would be, had there been one, and was stopped by the hydrant, which was forced by the impact some two and one-half inches out of a perpendicular line. The defendant's car was turned slightly to the left and stopped, headed east on Fifth street. The plaintiff's car was badly damaged. The door on the left side was broken and the glass shattered, the fender was bent, a large dent in the back and the front axle was bent, the right hub cap was knocked off and the steering mechanism underneath was disarranged, and the front springs were knocked from under it. The defendant's car was only slightly damaged. The hub cap of the right front wheel was knocked off, the right front

fender was bent and the right front lamp was broken. None of the occupants were injured.

The law governing the operation of automobiles in the town of Chase City was the same as that of the State, having been made so by the town ordinances.

The notice of motion charged the usual acts of omission and commission upon the part of the defendant as constituting negligence, but that chiefly relied upon was his failure to yield the right of way to the plaintiff, in accordance with the statutory requirement. The defendant's case was built upon the theory of the plaintiff's contributory negligence in that he (plaintiff) was driving at an unlawful rate of speed and that he failed to keep a proper look out, and that he drove into the intersection when he (defendant) had already entered it.

The assignments of error relied upon by the petitioner are as follows:

"First: The court erred in refusing to set aside the verdict of the jury, because the verdict is contrary to the law and the evidence.

"Second: The court erred in refusing to give instruction K, requested by petitioner."

The undisputed evidence shows that in approaching the intersection of the two streets from the north on Endley street or from the west on Fifth street, one, at a point on either street 200 feet from the intersection, has an unobstructed view of either street for a distance of at least 200 feet.

The accident happened in a business section of the town and highway speed signs were posted along Fifth street. At the corporate limits the sign indicated twenty-five miles per hour; about the place of the accident the speed was fifteen miles per hour, and a little further eastward five miles per hour, on account of the railroad crossing.

The testimony of the plaintiff in his examination in chief was, in part, as follows:

"Q. For what purpose were you coming to Chase City?

"A. I was coming there to see about the doctor for my father.

"Q. What was your father's condition?

"A. He was critically ill.

"Q. How long had he been that way?

"A. Since Sunday.

"Q. Since the previous Sunday?

"A. Yes, sir.

"Q. What doctor was attending your father?

"A. Dr. Saunders.

"Q. Was his condition any worse that morning than it had been for several days before then?

"A. No, sir.

"Q. Now, tell the jury exactly how this wreck occurred? First, how fast were you running your car?

"A. I have no way of telling exactly. I have no speedometer. It was a T model car. Around fifteen miles an hour."

Floyd Garland, the plaintiff's son, thirteen years old, corroborated his father in estimating their speed at fifteen miles an hour.

There were six witnesses, three of whom saw the plaintiff's car approaching the intersection, and the defendant and the two occupants of his car, all of whom testified as to the speed of the plaintiff's car. Their positive testimony was to the effect that plaintiff was traveling at an excessive rate of speed.

The physical facts attendant upon the impact and its immediate effect strengthen the conclusion that this was so.

The defendant's car was stopped almost at the point of collision, whereas the plaintiff's car went off to the right at least ten feet, where its momentum was not impeded by the iron post, but only the resistance of a six-inch iron hydrant stopped it, and the force was such as to deflect the hydrant two and one-half inches out of perpendicular.

The plaintiff's own witness, James Davis, who saw the accident, quite graphically described the effect of the crash of the

car upon the hydrant. His testimony upon this point is here quoted:

"Q. Where was Mr. Garland lying with respect to his car?

"A. On the east side.

"Q. He was on the east side?

"A. Yes, sir.

"Q. Was he lying on the street, or not?

"A. He was lying near the water plug. That is the *compact that knocked him out.*" (Italics supplied.)

It is quite convincing to us that the collision of the car with the hydrant caused the bending of its front axle and other damages to its running gear. The great weight of the evidence is conclusive that the speed of the defendant's car was from eight to twelve miles an hour. The testimony of the plaintiff's son, Floyd Garland, and the plaintiff's witness, James Davis, corroborated that of the defendant and his wife to the effect that as soon as defendant saw the plaintiff's car he turned his to the left. Now, in the very nature of things, the impact of the two cars in the circumstances could not have caused the happening at the hydrant.

That all this convicts the plaintiff of excessive speed in the operation of his car at the time of the accident is conclusive.

Again the plaintiff's own testimony shows that he was oblivious of the duty he owed to himself and others in the operation of his car upon approaching a street crossing. He utterly failed to keep a proper lookout. Here is a portion of his own testimony:

"Q. Why is it you didn't see Mr. Nicholson's car coming from your left?

"A. I was looking to the street on the right.

"Q. You didn't look to the left?

"A. No, sir; I did not."

Again the evidence unquestionably shows that the defendant had entered the intersection ahead of the plaintiff. Neither the plaintiff nor his son testified that they were in the intersection

before the defendant; on the other hand, the positive testimony and the uncontroverted facts point quite to the contrary.

■■ It is not to be denied that the driver of a car may be guilty of negligence, though he is proceeding at a slow rate of speed. His caution in the matter of speed will not absolve him from the duty of keeping a proper and effective lookout for oncoming vehicles when he is about to enter an intersection. In the performance of this duty we think the defendant failed and he was, therefore, guilty of negligence. That the contributory negligence of the plaintiff and the primary negligence of the defendant concurred to cause the accident is apparent.

■ In the case of *Bohlkin* v. *Portsmouth*, 146 Va. 340, 348, 131 S. E. 790, 792, 44 A. L. R. 810, it was said: "It should be remembered that the duty of the trial judge to set aside a verdict of the jury where the same is not justified by the law and the evidence is just as imperative as is the duty to sustain the verdict where a contrary condition exists."

The strength of the plaintiff's case was that he had the right of way, and that is true, under the provisions of the statute, unless he was traveling at an unlawful speed, or another vehicle was already within the intersection.

■ Speaking upon this phase of the subject, the Supreme Court of Minnesota said, in the case of *Primock* v. *Goldenberg*, 161 Minn. 160, 200 N. W. 920, 921, 37 A. L. R. 484, 486: "Too much insistence on the right of way, even when one is clearly entitled to it, may be the grossest kind of negligence. Drivers approaching from the right are not absolved by the statute from due care, although so many of them seem to think that they are immune for the time being, not only from the rules of road law, but also those of road etiquette. They are still under the duty of exercising due care and proceeding with ordinary circumspection, in order to avoid injury. Particularly are they obliged, if traveling at a high rate of speed, so to reduce it as to protect others, no matter where they are on the intersection."

In the case of *Clinchfield Coal Co.* v. *Wheeler,* 108 Va. 448, 62 S. E. 269, 271, this court said: "We are further of opinion that, in view of the salient facts established by the record, no verdict could be rightfully found for the plaintiff, under any instructions. It was, therefore, error for the circuit court to refuse to set the verdict aside as contrary to the law and the evidence."

While we think the ruling of the trial court in refusing instruction K was correct we shall make no further reference to it because it is not necessary to the decision of this case.

In our opinion, the verdict of the jury was plainly against the evidence, and it should have been set aside, and the refusal of the trial court to do so was error.

The judgment complained of will be reversed, and this court will enter judgment, as the trial court should have done, in favor of the defendant.

*Reversed.*