# Richmond

## YELLOW CAB COMPANY OF VIRGINIA, INC. v. ROSE L. GULLEY.

January 13, 1938.

Present, All the Justices.

The opinion states the case.

*Thomas O. Moss* and *Leith S. Bremner,* for the plaintiff in error.

*Callom B. Jones* and *Marion W. Jones,* for the defendant in error.

SPRATLEY, J., delivered the opinion of the court.

Mrs. Rose L. Gulley instituted this action by notice of motion to recover compensation for personal injuries and damages arising from a collision between an automobile being operated by her agent, and another being operated by an agent of the defendant, the Yellow Cab Company of Virginia, Inc. The defendant filed a plea of the general

issue, a plea alleging the contributory negligence of the plaintiff, and a cross-claim for damages.

The trial resulted in a verdict by the jury for the plaintiff in the sum of $800. The defendant moved to set the verdict aside and enter final judgment for it, on the ground that the verdict was contrary to the law and the evidence, in that the evidence disclosed that the plaintiff was guilty of contributory negligence as a matter of law. The trial court refused to grant the motion, and entered final judgment for the plaintiff, in accordance with the verdict of the jury.

The parties are herein referred to in the respective positions they occupied in the trial court.

The collision occurred within the intersection of Lombardy street, Monument avenue and Franklin street, in the city of Richmond, on July 29, 1936. The time was between 6:30 and 7:00 p. m., while there was still daylight. There had been rain that afternoon, it was still drizzling, and the paved streets were wet.

The evidence, including the plats and photographs filed therewith, furnish us with the following information as to the surroundings.

Monument avenue runs east and west, and has two lanes for travel, each thirty-six feet wide, the lanes being separated by a grass plot forty-four feet wide. The southerly lane is for east-bound traffic, and the northerly lane for west-bound traffic. Franklin street is a single lane highway, also running east and west, and is a continuation of Monument avenue, east of the monument hereinafter mentioned. Lombardy street runs north and south. Within the intersection of these streets is a monument erected in memory of General J. E. B. Stuart. This monument is surrounded by a picket fence with an encircling curbed walkway, the whole occupying an elliptic space fifty-two feet in width, north and south, and forty-five feet in width east and west. Surrounding this monument is a very large open space known as "Stuart Circle." The corners of the streets converging on this area, are rounded in wide area, leaving

the entrance to each street or lane, and the driveways around the monument, especially on the northerly and southerly sides thereof, much wider than the streets or lanes themselves, and affording an extended open view both left and right to any one approaching the intersection. The grass plot between the two lanes on Monument avenue is thirty-eight feet from the nearest point of the curb line of the Stuart monument. From the north curb of the western drive on Monument avenue, it is 57.95 feet to a line opposite the center of the monument going southwardly. From thence, it is 29.75 feet to a point four feet south of the southerly curb of the monument. It is one hundred and ten feet from the center line of the monument northwardly in the direction of Lombardy street to two white painted lines marking a lane or cross-walk for pedestrian travel across Lombardy street.

The car of the plaintiff was proceeding along Lombardy street across the two traffic lanes of Monument avenue, within the intersection above described. The car of the defendant, a taxicab, was proceeding eastwardly along the second or southerly lane of Monument avenue, used for east-bound traffic. The collision took place in the area on the southerly side of the monument, in the east-bound traffic lane of Monument avenue, where it is intersected by Lombardy street.

Passengers in both cars were injured. The right front of the Plymouth car was badly damaged. Its right front wheel, right front springs, right front lamp, and nearly all of the other parts on its right front being broken or injured. The damages to the other car were on the left side of that car, and around and about the rear portion of its left front door.

The plaintiff was the owner and an occupant of the Plymouth car, a new automobile, which was being driven by her chauffeur, Frank Rhodes, a colored man. Both were from out-of-town, and strangers in Richmond.

The defendant concedes here the negligence of its driver. On appeal, therefore, the judgment for the plain-

tiff must be sustained, unless her contributory negligence is shown by certain and uncontroverted evidence. If the question of contributory negligence depends on a state of facts, upon which reasonable and fair-minded men might arrive at different conclusions, it is then a question for the jury, and their verdict should not be disturbed. But where the uncontroverted evidence and the direct inferences therefrom are such that reasonable and fair-minded men should not differ in their conclusions, the question then becomes one of law, and must be decided by the court. *Etheridge* v. *Norfolk Southern Railroad Company,* 143 Va. 789, 129 S. E. 680; *Whipple* v. *Booth,* 155 Va. 413, 154 S. E. 545; *Angell* v. *McDaniel,* 165 Va. 1, 181 S. E. 370.

Was the plaintiff guilty of contributory negligence as a matter of law? A decision of that question turns upon the evidence of the plaintiff and her driver.

An examination of their testimony as to what occurred from the time the plaintiff's car entered the intersecting area at Monument avenue, proceeding southwardly from Lombardy street, discloses the following pertinent facts:

The driver of Mrs. Gulley's car says that when he had proceeded about four feet across the white line marking the cross-walk on Lombardy street, "I happened to look up the street to my right and seen the cab coming down— * * *. I goes on up about 6 or 7 more feet and I blows my horn; I seen he was traveling at a terrific speed. When I blew my horn I went on to the middle of the monument and when I got to the middle of the monument I seen he wasn't going to stop or I couldn't get across there—."

He estimated that the cab was distant 180 feet when he first saw it, and that it was traveling at least 45 miles an hour. He continued to drive his car into the intersection at the same rate of speed, fifteen miles an hour, with which he entered it, while it appeared to him that the oncoming cab was not slackening its speed. He did not slow up until he had reached a point opposite the middle of the monument, nor bring his car to a stop until after he had gotten four feet from the curb of the monument in a southerly

direction into the line of travel of the fast speeding cab. He blew his horn a second time as he proceeded across, apparently depending upon the blowing of the horn to preserve him from the collision instead of immediately stopping his car, or changing his course. He thinks that the cab was about ten or fifteen feet from the white lines across the easterly traffic lane of Monument avenue when he had reached the middle of the monument, or, perhaps, a little farther advanced. He says that when he undertook to apply his brakes and to turn his car, the cab had not entered the white line across the east driveway of Monument avenue, nor had it given any warning signal, nor slowed up its speed. When he heard the lady in the rear scream, he looked at the cab, which was then so close on his car as to make a collision imminent, and he reached over and put his hand in front of the lady to keep her from going into the windshield. There was no other automobile, or any other obstacle to obstruct a full and complete view by each driver of the other.

Mrs. Gulley, in the main, testified to the same facts. She saw the other car as they first entered the intersection. She described the rate of its speed "as coming very fast, extremely fast," and as being like "a bullet out of a gun." She admits that her car continued to approach the point of collision under the circumstances described by her chauffeur. She added that just before the crash came, her chauffeur threw his hands in front of her, she put both her hands over her face, and remembers no more of what happened.

■ Mrs. Gulley is bound by the admissions of herself and chauffeur. Her case can rise no higher than her own evidence. *Virginia Electric and Power Company* v. *Vellines*, 162 Va. 671, 175 S. E. 35.

■■ The law requires the driver of a car to keep a proper lookout, in order that he may avail himself of what the lookout discloses to prevent injury to himself as well as to others. Keeping a lookout is without avail unless one utilizes the information thereby secured. One who keeps a

lookout, and fails to take advantage of what it discloses, is as guilty of negligence as one who fails to keep a lookout. The result is the same. He who doesn't take heed of a danger signal, plainly seen with the eyes, might just as well shut his eyes to the signal. It is as true today as it was in the days of the prophet, Isaiah, that the fate of one who seeth but observeth not, is preordained. The rule that one should exercise ordinary and reasonable care to avoid danger is as old as the law of self-preservation. None are so blind as those who will not see.

The car of the plaintiff was in a place of safety when the owner and her driver had knowledge of the danger immediately in their front, and instantly coming closer. Heedless of every sense of precaution, in the face of a known danger, they proceeded closer to it, and if they did not actively and actually thrust themselves into the danger, they did, in fact, invite it. Even if she had the right of way, she was not absolved from exercising due care and ordinary circumspection to avoid injury to herself and others. *Nicholson* v. *Garland,* 156 Va. 745, 158 S. E. 901; *Johnson* v. *Harrison,* 161 Va. 804, 172 S. E. 259.

The same rule applied in the case of *Johnson* v. *Harrison, supra,* applies here. There the intersection was in the open country. Here it was open and visible from both sides for a great distance. There the driver of the plaintiff's car alleged that he did not see the other car when he was charged with the duty of seeing it. Here the plaintiff's driver testified that he saw the other car, but proceeded as if he had not seen it. The inevitable result in either situation is the same. By analogy, the law requires one to have properly adjusted brakes on a motor car, but if he does not use them in an emergency he may as well not have them.

The plaintiff relies upon the case of *Whipple* v. *Booth, supra,* and *Angell* v. *McDaniel, supra,* as authority for the proposition that the question of contributory negligence was for the jury. Each of these cases may be readily distinguished from the case at bar.

In the *Whipple Case, supra,* both automobiles were proceeding at a reasonable rate of speed. The plaintiff was on her right side of the street, and she claimed that the defendant was driving either in the center, or on his left side of the street, and that she had turned her automobile to the right as far as was possible; but notwithstanding this, the defendant, without turning, drove his car into her car. This statement of the plaintiff and other physical facts presented a question of fact for the jury.

In the *Angell Case, supra,* the plaintiff testified that while traveling at a reasonable speed he entered an intersection of a city street, and seeing no car approaching, had almost crossed the intersection before he was struck by the defendant's car, traveling at a speed of sixty to seventy miles an hour. The evidence of the plaintiff and certain evidence of other conditions, presented questions of fact for the jury to determine whether or not the plaintiff could, or ought to have seen the defendant's car, if he did look as he claimed.

We think that the evidence of the plaintiff and of her chauffeur convicts her of the clearest kind of contributory negligence, a negligence concurring and continuing to the moment of the collision.

In coming to the above conclusions, it has not been necessary or proper to consider other evidence in the case contradictory of certain portions of the plaintiff's evidence; but it is reassuring to note that three police officers of the city of Richmond, including a lieutenant of police, testified most positively that immediately after the collision, the driver of the plaintiff's car admitted in their presence, that he did not know how the accident happened, and did not see the cab until he hit it.

The judgment appealed from is, therefore, reversed, and final judgment will be entered here for the plaintiff in error.

*Reversed.*