# Wytheville

RUSSELL ELLETT, AN INFANT, BY A. C. ELLETT, HIS NEXT
FRIEND, V. RAY CARPENTER AND STELLA CARPENTER.

June 12, 1939.

Record No. 2072.

Present, All the Justices.

The opinion states the case.

*Burnett Miller* and *C. T. Bowers,* for the plaintiff in error.

*C. O'Conor Goolrick,* for the defendants in error.

HUDGINS, J., delivered the opinion of the court.

This writ of error brings under review the proceedings in the trial of an action instituted to recover damages for personal injuries sustained by Russell Ellett in an automobile accident. The jury returned a verdict for $10,000. This verdict was set aside by the court, and final judgment was entered for defendants. This ruling constitutes the only error assigned.

The accident occurred about 3:30 p. m. on October 4, 1937, at the intersection of Main and Evans streets in the town of Culpeper. Main street runs north and south. Evans street runs east and west, and crosses Main street at right angles. Where Evans street enters the western edge of Main street, it is 28 feet wide, and at the eastern edge of Main street it is 25.2 feet wide. Main street is 46½ feet wide from curb to curb, but at its intersection with Evans, and for some distance south, there is no curb and no sidewalk, and its full width is 60 feet. Plaintiff was driving north on Main street in a 1934 Ford "pick-up" truck. Mrs. Carpenter, one of defendants, was proceeding east on Evans street in a Chevrolet coach. J. M. Pierce, 18 years of age, was riding in plaintiff's truck, and seated on the right side. On the southwest corner of the intersection there is a service station with the usual gas pumps in front, all of which are back several yards from the property lines (the exact distance is not stated in the record). Thus the occupants of the respective vehicles had an unobstructed view of the streets for some distance (the exact measurement is not given) before reaching the intersection. This view was partly obstructed by a large van with a trailer that was standing three feet from the western curb of Main street and a half block to the south of the service station.

Pierce testified that the truck had traveled one-quarter of the distance across the intersection before he saw the defendants' car approaching, and that it was then 80 feet west of the intersection. He stated that, after the truck had traveled three-quarters of the way across the intersection, or less than 14 feet, the defendants' bumper struck

the left rear fender and caused the truck to turn over on its right side and skid some distance to the northeast side of Main street; it then righted itself, turned over on its left side, skidded in a semicircle to the opposite or west side of Main street, and came to rest on its left side with its front pointing in the opposite direction from which it was proceeding. Ellett was caught under the truck and rendered temporarily unconscious. Pierce crawled out of the right door.

After a view of the scene by the judge and jury, Pierce was again called as a witness and made substantial changes in his testimony, which will be hereafter noted.

Mrs. Carpenter, the operator of defendants' car, testified that before entering the intersection she stopped her car and looked both north and south on Main street. Seeing that the way was clear, she entered the intersection either in low or second gear, traveling 8 or 9 miles an hour. She did not look south again. The first time she saw plaintiff's truck was when it was immediately in front of her, and east of the center of Main street. The only part of the car which touched the truck was her front bumper. This impact was caused by the operator of the truck trying to cross the intersection in front of her. She immediately stopped her car and saw the truck as it passed, turning over first on one side and then on the other and coming to rest on its left side with its front pointing in her direction. After the accident she crossed the intersection and stopped on the right-hand side of Evans street east of the intersection. At the time of the accident she had 2 children, 8 and 6 years of age, on the back seat and, on the floor of her car, an open oyster bucket of one-gallon capacity "a little over half full of milk." This bucket was not overturned in the collision "and—about two tablespoons of milk, maybe not that much" was spilled. The only mark on her car which indicated that it had been in an accident was a slight scratch on her front bumper.

This accident occurred in open daylight when visibility was good. Several witnesses testified that while the pave-

ment was wet from recent rains, it was not misting or raining at the time. Each driver had a clear unobstructed view of the other vehicle some distance before either reached the intersection. Neither saw the other until it was too late to avoid the accident. Mrs. Carpenter's exact language was "when I got about halfway over a Ford truck came up, and glanced against my car." Also, "when I first saw the truck it was middle way of the cab; then it just glanced my bumper." Ellett testified: "Did you see it (defendants' car) when it struck you?" "No, sir." "Did you see it before it struck you?" "No, sir." Pierce, in answer to a question as to what direction Ellett was looking, said, "He was looking straight in front of him. He had just wiped his windshield and took his hand off the wiper."

Before defendants introduced any testimony, they moved to strike the evidence. The trial court, in ruling on this motion, said: "On the question of the primary negligence, as to whether this evidence sustains primary negligence, you rely, in a large measure, on the evidence of Mr. Pierce, necessarily, Mr. Miller?

"By Mr. Miller: And the plaintiff's, too.

"By the Court: I say, in large measure. Mr. Pierce's evidence is contradictory in itself, to some extent. His evidence made yesterday morning and his statement made after the view are somewhat conflicting. * * * Mr. Pierce's evidence is, as I say, contradictory. On the question of primary negligence I am speaking now. The deductions to be had from the truck, itself, to my mind, are not definite. Here is a truck that had been through the accident of sliding on its side, skidding on its side, of turning over twice, and must, necessarily, have been physically greatly damaged. I think the conclusion is almost inescapable that there was much greater damage to that truck from what happened after the impact than what happened at the impact, making any deductions from the physical condition of the truck, itself, rather far-fetched. I think, perhaps, those wheels may have been broken, and the probability is they were broken, by the sliding and turning over, rather than the im-

pact. However, Mr. Pierce does testify that there was impact, and if that was caused by the negligence of the defendant and was the primary cause of the condition of this truck, that would not relieve the defendant of negligence, if she were otherwise guilty of negligence, and, primarily, also, the question of the weight of the testimony is a question for the jury, so, while Mr. Pierce's testimony is, as I say, vague and somewhat contradictory, the Court thinks that is a question for the jury to pass on.

"The more serious question, to my mind, is the second ground of defense, that, even if the defendant was guilty of negligence, that the plaintiff, himself, was guilty of contributory negligence equally as culpable as the defendant's primary negligence. The evidence is that he did not see this car before the impact, at the time of the impact, or subsequent to the impact. Ordinarily a driver has to use reasonable care to prevent injury to others. The Court would have to hold that it is a matter of law, to take it away from the jury, at this point. I don't think this is necessarily a matter of law. Primarily, it is a question for the determination of the jury. While the Court is in some doubt on this motion and considers it seriously, yet I am also aware of the rule that the motion to strike, especially when made at the end of the testimony of the plaintiff, is sparsely used in Virginia, and is a motion to be sparsely used, as I see it, when the Court is in any serious doubt as to what the Court should do. The Court has greater opportunity when all the evidence is in to pass on the questions; so that, because the Court is in doubt whether this motion should prevail at this time, the Court overrules the motion."

It thus appears that the trial court realized that the more serious question in the case was whether the evidence conclusively convicted plaintiff of contributory negligence, but properly decided, at that stage of the proceedings, to submit the question to the jury. When, in due course, the motion to set aside the verdict was made, the trial court, after a more deliberate consideration, held that plaintiff was guilty

of contributory negligence as a matter of law, and sustained the motion.

A verdict which has been disapproved by the trial judge is not entitled to the same weight on appeal as one that has been approved by him. *E. I. DuPont De Nemours & Co.* v. *Taylor,* 124 Va. 750, 766, 98 S. E. 866.

"But this does not mean that he can set aside a verdict merely because if on the jury he would have found a different verdict. He must be satisfied from the evidence adduced either that there was no evidence to support the verdict, or that the verdict was plainly contrary to the evidence. This conclusion must be drawn from the whole evidence in the case, but in arriving at his conclusions he has somewhat more latitude than this court would have in passing upon a verdict that was sanctioned by the judgment of the trial court." *Ricketts* v. *J. G. McCrory Co.,* 138 Va. 548, 560, 121 S. E. 916, 920.

There is no substantial conflict in the evidence except in the testimony of Mrs. Carpenter and Pierce. Pierce testified that he was an experienced driver and well able to estimate the speed of automobiles. He stated that the truck was traveling at the rate of 20 miles per hour, and that the Chevrolet coach was approaching at the rate of 20 to 25 miles per hour. After he had accompanied the judge and the jury to the scene of the accident he pointed out to the judge where the truck was when he first saw the Chevrolet coach approaching. This distance was measured and it was found that the truck was 27 feet from the point of impact, and the Chevrolet coach was 69 feet from the point of impact. If this testimony were true and the vehicles were traveling at the respective speeds mentioned, the truck would have crossed the intersection before defendants' car reached it. Yet this witness stated that, at the time, he realized that a collision was unavoidable. He did not call Ellett's attention to the approaching car for fear that Ellett would apply the brakes and stop in the intersection.

A careful consideration of this testimony shows that the trial court was fully justified in stating that Pierce's tes-

timony was uncertain and vague. The fact that the collision actually occurred is conclusive proof that Pierce was mistaken either in his estimate of distance or of the speed of the respective vehicles. This is true, even though we confine our consideration to his version after he had an opportunity to visit the scene and make substantial changes in his testimony. The fact that Mrs. Carpenter stopped her automobile with insufficient force to disturb 2 small children on the back seat, or to spill the milk in the bucket on the front floor of the automobile, is corroborative of her statement that she was traveling very slowly, and that the impact of the two vehicles was nothing more than a glancing blow.

If Pierce, sitting to the right of plaintiff, could see defendants' automobile approaching from the left when it was 69 or 80 feet from the intersection or point of impact, then plaintiff, if he had been keeping a proper lookout, could likewise have seen defendants' car approaching. If Mrs. Carpenter was negligent in failing to see plaintiff's truck until it was in front of her car, plaintiff was equally negligent in failing to see defendants' car at all. It was the duty of the operator of each vehicle, on approaching the intersection, to keep a proper lookout to ascertain whether there was any vehicle approaching such intersection either from the right or left. This duty, by their own admissions, was not performed by the operator of either vehicle.

Plaintiff insists that his truck entered the intersection first and therefore he had the right of way. This contention is based solely upon the testimony of Pierce. Pierce testified that the point of impact was in the northeast quadrant of the intersection, and that the vehicles were approaching at approximately the same rate of speed. As Main street is 22 feet or more wider than Evans street, Mrs. Carpenter's car must have traveled more than 30 feet from the western edge of Main street in order to reach this quadrant, while the truck was compelled to travel less than 14 feet in order to enter it. If the impact occurred in the southeast quadrant of the intersection, as defendants con-

tend, Mrs. Carpenter's car was compelled to travel the same distance to the point of impact while the truck entered this quadrant as soon as it passed the south line of Evans street. It follows that plaintiff has failed to prove that his vehicle entered the intersection first, which ordinarily would have given him the right of way. But, even if plaintiff had the right of way, he was still under the duty to exercise due care to proceed with ordinary circumspection in order to avoid injury of other users of the highway. *Johnson* v. *Harrison*, 161 Va. 804, 172 S. E. 259.

The principles controlling the decision of this case are stated in numerous Virginia decisions. A striking example of them is *Nicholson* v. *Garland*, 156 Va. 745, 158 S. E. 901. In that case it appeared that plaintiff was driving east on Fifth street in the town of Chase City and as he approached Endly street, which intersects Fifth at right angles, the defendant, Nicholson, was approaching it from the north at a slow rate of speed. Plaintiff failed to look to his left to observe oncoming traffic. There was a collision. In the opinion setting aside the judgment of the trial court, this court said: "Again the plaintiff's own testimony shows that he was oblivious of the duty he owed to himself and others in the operation of his car upon approaching a street crossing. He utterly failed to keep a proper lookout," and was held guilty of contributory negligence as a matter of law.

Other cases in which the same principles are applied are: *Camp* v. *Bryant*, 171 Va. 390, 199 S. E. 469; *Harris* v. *Howerton*, 169 Va. 647, 194 S. E. 692; *Yellow Cab Co.* v. *Gulley*, 169 Va. 611, 194 S. E. 683; *Pratt* v. *Miles*, 166 Va. 478, 186 S. E. 27; *Braswell* v. *Virginia E. & P. Co.*, 162 Va. 27, 173 S. E. 365; *Johnson* v. *Harrison*, 161 Va. 804, 172 S. E. 259; *Meade* v. *Saunders*, 151 Va. 636, 144 S. E. 711; *Shuster* v. *Virginia Railway & Power Co.*, 144 Va. 387, 132 S. E. 185, and *Clinchfield Coal Corp.* v. *Osborne's Adm'r*, 114 Va. 13, 75 S. E. 750.

The judgment of the trial court is affirmed.

*Affirmed.*