CITY CABS, INCORPORATED v. HAROLD GRIFFITH.

April 20, 1953.

Record No. 4041.

Present, All the Justices.

The opinion states the case.

*Sanford & Clement,* for plaintiff in error.

*Meade, Talbott & Tate,* for defendant in error.

SMITH, J., delivered the opinion of the court.

The sole question presented by this case is whether the trial court was correct in setting aside the verdict in favor of City

Cabs, Incorporated on the ground that the plaintiff's driver was guilty of contributory negligence as a matter of law.

The accident, which gave rise to this action for property damage, occurred on Main street at its intersection with Broad and Rison streets in the city of Danville on November 3, 1951, about 1:15 a.m., and involved a taxicab operated by Moses J. Phelps, the agent and servant of the plaintiff, and an automobile owned and operated by the defendant, Harold Griffith.

About 100 yards south of the scene of the collision, West Main and South Main streets converge and become Main street,[1] a primary thoroughfare through the city. Within the acute angle formed by the convergence of these two streets stands the Mount Vernon Church, which faces up Main street to the north.

Broad street intersects Main street at a right angle from the west and terminates at that point. Rison street intersects Main street at approximately a right angle from the east at which point it too terminates. The intersections of Broad and Rison streets with Main street are not exactly opposite each other, but are offset in such a manner that the south side of Broad street is almost on a line with the north side of Rison street. At this intersection Main street is about fifty-five feet wide, Broad street is about forty feet wide, and Rison street is about seventeen feet wide.

The speed limit at the intersection was twenty-five miles per hour. At the time of the accident there were no traffic control signals in operation, nor were there any "stop" or "slow" signs. There was a street light on the southeast corner of Main and Rison streets, another at the apex of the triangle in front of the church, and a third on the west side of Main street between the other two.

On the night of the accident, the defendant, a resident of Leaksville, North Carolina, was enroute to meet his son at the Southern Railway station in Danville and had entered Danville from the south via U. S. Highway No. 29 and continued into the city on West Main street. He testified that he was familiar with his route of travel in Danville and that he slowed down and nearly stopped just past the church where West Main and South Main streets converge and then proceeded along Main

---

[1] In designating directions herein it is assumed that Main street runs north and south at the scene of the accident herein involved.

street toward the intersection of Rison street at a speed of twenty-five miles per hour.

The plaintiff's cab driver was proceeding east on Broad street intending to make a left turn at the intersection of Broad and Main streets and continue north up Main street. Before reaching the curb line of Main street, he stopped his cab, but at this point his vision to the right down Main street toward the church was blocked by the Caswell Apartments, so he entered the intersection at a speed of ten miles per hour. When he had reached the center of Main street, the cab driver looked to his right and for the first time saw the defendant's car just sixty feet away headed toward him up the middle of Main street at a speed he estimated to be forty-five or fifty miles per hour.

Instead of making a left turn as he had intended, the cab driver made a bee-line for Rison street, but before he had cleared Main street the defendant's car struck the center of the right-hand side of the cab at a point on Main street in line with the center of Rison street about eight feet out from a projection of the east curb line of Main street.

After the collision the taxicab came to rest on the sidewalk, bottom side up, astride a fire plug at the northeast corner of Rison and Main streets and the defendant's car was headed across Main street toward the mouth of Rison street, about a car length from the projection of the curb line.

The only eye-witnesses to the collision were the drivers of the two vehicles involved in the accident.

On a clear day, a driver entering Main street from Broad street (as did the plaintiff's driver) could see easily to his right a point 470 feet away on the east side of West Main street and the Mount Vernon Church 370 feet away.

It was raining at the time of the accident, but the windshield wipers on the cab were functioning properly and the cab driver testified he had a clear vision through the side window on his right. In this connection, plaintiff's driver was asked, "* * * if he [the defendant] had been in that area between the church and you, you could have seen him?" The driver answered, "Oh yes."

As to the lookout maintained by the cab driver when he entered the intersection and proceeded across it, he testified on cross-examination to these pertinent facts, as follows:

"Q. Now, from the time that you eased by the edge of the

corner of the Caswell Apartments to where you could see up Main street to the church did you continue to look in that direction until you got to the center of the street and started to make your turn?

"A. Looked both ways.

\* \* \* \* \* \*

"Q. You eased out and kept looking both ways and you didn't see this approaching car until you got to the center of the intersection, did you?

"A. That is right.

\* \* \* \* \* \*

"Q. He [the defendant] was bound to get down to that point 60 feet from where you were. How did he get down there without you seeing him? You said you were looking all the time?

"A. That is right.

"Q. You didn't see him until you got to the center of the street?

"A. When I seen him he was in the center of the street.

"Q. But you were looking all the time.

"A. That is right.

\* \* \* \* \* \*

"Q. Isn't it a fact you didn't look and you didn't see him until he was right close on that intersection?

"A. I looked all the time.

"Q. And never saw him?

"A. Not until I had got out near the center of the intersection and then he popped up in my sight."

In order to account for the cab driver's failure to see the defendant's car until it was almost upon him, the plaintiff claims that its "driver's lookout as he entered the intersection was confined to vehicles being operated at a reasonable rate of speed and on the proper side of Main Street. He had a right to rely on the exercise of ordinary care on the part of drivers of other vehicles while using the streets. The plaintiff's driver was required to look up Main Street for a reasonable distance for approaching traffic. He certainly was not required to anticipate and foresee that the defendant's car would be driven into the intersection at fifty miles an hour without diminishing its speed."

To support this contention, the plaintiff likens its position to that of the plaintiffs in *Caldwell* v. *Parker,* 191 Va. 471, 62 S.

E. (2d) 34, and *Angell* v. *McDaniel,* 165 Va. 1, 181 S. E. 370.

In the *Caldwell* case the plaintiff Parker, recovered a verdict and judgment as a result of an automobile collision which occurred about 10:30 p.m. It was contended that the plaintiff was guilty of contributory negligence as a matter of law in not seeing the car that hit him. Parker was on the north side of Route No. 351, which runs east and west between Newport News and Hampton, and intended to cross over to the south side of the highway and then proceed east. Before entering the highway from a private driveway, he stopped at the curb line and looked in each direction, and seeing nothing started to cross the highway; but when he had reached the center of the pavement he was struck violently by the westbound Caldwell car, which according to several witnesses was traveling eighty miles per hour or more.

We said in 191 Va., at page 478, that "Plaintiff's failure to see the oncoming car until about the moment of the impact has been reasonably and sufficiently explained." The reasonable and sufficient explanation referred to was the evidence that the Caldwell car was shown to have been traveling at such a high speed "that it may well have been beyond the range of reasonable vision when he [the plaintiff] slowly entered the highway * * *."

In the case at bar we do not have a reasonable and sufficient explanation of the cab driver's failure to see the defendant' car until it was close upon him. The defendant testified that he was going twenty-five miles per hour. The plaintiff's driver did not see the defendant's car until it was within sixty feet, so his testimony does not carry great weight as to its speed, because of the brief period between the time he saw it and the collision. For example, the cab driver was asked if the defendant's car had both lights burning and to this the cab driver answered, "Well, I am going to tell you about that. I wouldn't swear that it did for the simple reason it happened so quick I couldn't tell." The result is that we cannot accept his estimate with full satisfaction as we did that of the plaintiff, Parker, in the *Caldwell* case where the evidence clearly showed excessive speed. Although we are bound by the verdict of the jury finding that the defendant was going at an excessive speed, that does not in this case establish a reasonably satisfactory explanation as to

why the plaintiff's driver did not see the defendant's car until it was within sixty feet.

In the *Angell* case the plaintiff, McDaniel, recovered a verdict and judgment which was attacked on the ground that he was guilty of contributory negligence which should bar his recovery. Specifically, it was asserted that McDaniel drove along 13th street in Roanoke into the intersection of Campbell avenue without looking to his right for approaching traffic; that if he had looked, he would, of necessity, have seen the defendant's car approaching at a rapid rate of speed (60 to 70 miles per hour) and that his failure to look efficiently before going into the intersection was negligence as a matter of law.

This court said, however, that the evidence showed that the plaintiff did look to his right before he drove into Campbell avenue and that another fact ignored by the defendant was that the plaintiff was only required to look down Campbell avenue for a reasonable distance for approaching cars and was not required to foresee that the defendant's car would be driven into the intersection at sixty or seventy miles per hour.

It will be seen that the facts in the *Angell* case clearly distinguish it from the case at bar. McDaniel knew he was approaching a dangerous corner and that there was a hedge along the lot at the corner of 13th street and Campbell avenue. He drove to a point where he could see clearly down Campbell avenue and did not see any cars approaching, so he proceeded across the street without looking again. The speed of the defendant's car was such that it could, after the plaintiff's car had come into the intersection, have traveled the reasonable distance the plaintiff was required to look before entering the intersection.

In the case at bar the cab driver stopped where he could not see to his right because of the Caswell Apartments on the corner, then moved into the intersection allegedly looking all the time until he reached the center of Main street, where for the first time he saw the defendant's car only sixty feet away, though it necessarily had been in plain view for at least 370 feet. The defendant's car could not have been invisible; if the cab driver had looked effectively he must have seen it.

The plaintiff is bound by its own evidence as to how and why the accident occurred. The cab driver was the plaintiff's only witness as to this, and if his testimony shows that he was

guilty of negligence which proximately caused or contributed to the injury complained of, then the plaintiff cannot recover. *Whichard* v. *Nee*, 194 Va. 83, 72 S. E. (2d) 365; *Yellow Cab Co.* v. *Gulley*, 169 Va. 611, 194 S. E. 683.

 ■ Caution in the matter of speed did not absolve the plaintiff's driver from the duty to keep a proper and effective · lookout for oncoming vehicles when he entered Main street. *Wallingford & Cooper* v. *Karnes*, 194 Va. 648, 74 S. E. (2d) 161; *Nicholson* v. *Garland*, 156 Va. 745, 158 S. E. 901.

Even if we assume that the plaintiff's driver entered the intersection first, this would not relieve him of the duty to keep a proper and effective lookout.

"The fact that the plaintiff had * * * the right of way over the defendant on this occasion, in no degree could have excused him for his failure to look for the defendant, who driving at fifty miles per hour, would necessarily have been seen by the plaintiff if he had kept a proper lookout." *Johnson* v. *Harrison*, 161 Va. 804, 172 S. E. 259.

Applying the applicable principles of law to the case at bar, we feel that the testimony of the cab driver clearly shows that he was not keeping a proper lookout when he entered and proceeded to cross Main street, or, if he was keeping such a lookout that he did not take heed of what he saw or should have seen. This failure on his part was negligence as a matter of law, which efficiently contributed to the accident and bars the plaintiff's claim to relief. *Penoso* v. *D. Pender Grocery Co.*, 177 Va. 245, 13 S. E. (2d) 310.

The trial court's action in setting aside the verdict and entering final judgment for the defendant was correct.

*Affirmed.*

HUDGINS C. J., dissenting.

A study of the record convinces me that the contributory negligence of the driver of the cab and the negligence of the defendant were questions for the jury. The jury having been properly instructed on the two issues, its finding is binding upon the court. My conclusion is that the judgment of the trial court setting aside the verdict and entering judgment for defendant, should be reversed and final judgment entered on the verdict for plaintiff.