# Wytheville

## C. N. OTEY v. WILLIE BLESSING, ADM'X.

June 8, 1938.

Present, Holt, Hudgins, Gregory, Browning, Eggleston and Spratley, JJ.

The opinion states the case.

*Warren & Cantwell, George P. Young* and *S. B. Campbell,* for the plaintiff in error.

*J. C. Shaffer* and *Thomas F. Walker,* for the defendant in error.

HOLT, J., delivered the opinion of the court.

Under review is an automobile accident in the daytime at a highway crossing.

Plaintiff's decedent, Miss Lollie Fisher, in her Plymouth coupe, driven by her brother-in-law, Grady Blessing, near

the corporate limits of Wytheville, drove east along that arterial road known as the Lee highway. The defendant, C. N. Otey, in a Packard car, drove in a northeasterly direction along what was at one time a part of that road but is now cut off from it by reason of a change in its location. At the crossing the old road approaches the new from the southwest at an angle.of from twenty to twenty-five degrees. The paved surface of the old road is sixteen feet wide; that of the new road twenty, with five or six feet of shoulder to the north.

At this intersection there was a collision. Miss Fisher was killed. Her administratrix in a fifteen-day motion has recovered a verdict and judgment for $5,000. Mr. Otey not only denied liability but by way of counterclaim asked that he be given a judgment of $10,000 against this administratrix. Since judgment went against him on the original motion, of course he did not recover.

■ Where there has been a verdict confirmed by the trial judge, any detailed discussion of all the evidence and of its conflicts would be unfruitful. Adequately supported by that which the jury had a right to believe, it is final. We do not mean to say that an account given by one set of witnesses is necessarily true, or that that given by another is necessarily untrue; but when a jury has once spoken, and when their verdict is in this manner buttressed, there can be no successful appeal from its findings.

Eyewitnesses for the plaintiff said that the Otey car approached this intersection slowly and stopped with the front wheels touching or near the paved surface of the new road. Blessing was about 220 steps away when he first noticed it. When eighty-five or ninety steps away, he applied his brakes. He was sixty steps away when Otey stopped. Then it was that he released his brakes and resumed speed, and was eighteen or twenty steps away when Otey started across the road, apparently bent on a left turn. Blessing's speed was from thirty-five to forty miles an hour. This was reduced by five miles when he applied his brakes but was resumed when they were released. When Otey

stopped sixty steps away, Blessing "pulled a little over towards the middle of the road," and when Otey started across, Blessing, in an effort to pass in front of him, turned still further to the left. Just at that time, Otey "stepped on the gas," and with this sixteen-foot car practically blocked this effort of Blessing, who could not turn further to the left because of a bank which reached up from the road's shoulder. In this dilemma, he then undertook to pass to the rear. That movement could not be completed and a collision followed, the front of the coupe striking the left side of the sedan.

■ There can be no doubt about Otey's negligence. The stop sign standing at the crossing and the mandate of the statute (Code, section 2154(132)) give to the high road the right of way. Yet after having stopped and when this fast approaching car was but eighteen or twenty steps away and in plain view, he attempted to pass in front of it in a car sixteen feet long. It was almost a suicidal movement. To stop and not to look is inexcusable and inexplainable.

Wherein was Blessing negligent? He passed from the right to the center of the road when Otey stopped. Between that movement and the accident there is no causal connection.

■■ It is natural to assume that one on a main highway, rapidly approaching a crossing, would take it for granted that another on a secondary road likewise approaching it, but who had stopped, did so with the intention of giving arterial traffic the right of way. One who is required to stop has not the right of way. That right, assuming that it had theretofore existed, is then suspended and remains suspended until he can proceed with safety.

■■ It is true that Blessing did not blow his horn, and it is also true that he said he could stop his car traveling at forty miles an hour in twice its length, if the roadway was not slick. We doubt it. There was no occasion for Blessing to blow his horn after Otey's car had stopped. That in itself proclaimed that Otey would not undertake to proceed until he could do so in safety. If it be conceded

that Blessing could stop his car under favorable conditions in twice its length, his failure to stop does not necessarily indicate negligence for the minds and muscles of men do not act with instantaneous efficiency when faced by some unlooked-for emergency.

"If the minds, nerves and muscles of men were so accurately co-ordinated that there could be instantaneous action to meet an emergency, there would perhaps be merit in this case, but as men are actually constituted, in order that the doctrine of the last clear chance may apply, 'it must appear that in contemplation of the entire situation, after the danger of the plaintiff became known to the defendant, or ought to have been discovered by him by the exercise of ordinary care, he negligently failed to do something which he had a clear chance to do to avoid the accident. * * *' *Real Estate, etc., Ins. Co.* v. *Gwyn's Adm'x,* 113 Va. 337, 74 S. E. 208." *Norfolk So. R. Co.* v. *White's Adm'x,* 117 Va. 342, 84 S. E. 646, 647.

We may concede for the sake of argument that Blessing failed to act with the best of judgment. When Otey started to cross the highway in front of him, he cut to the left in the hope that he might in that manner safely pass in front of the Packard car. When he found that this could not be done, he undertook to turn back and to pass it to the right. He failed. The emergency which confronted him was due to Otey's heedlessness, and for it he was in no wise responsible.

"It is true, as contended, that men confronted by sudden emergencies are not required to follow the safest course. The doctrine of error *in extremis* is a humane one and has been frequently applied by this court, but it cannot be invoked by one who is at fault and whose negligence or misconduct brings about the peril in which he is placed." *Virginia E. & P. Co.* v. *Ford,* 166 Va. 619, 186 S. E. 84, 86; *Lavenstein* v. *Maile,* 146 Va. 789, 132 S. E. 844; *Virginia & S. W. R. Co.* v. *Hill,* 119 Va. 837, 89 S. E. 895; *Real Estate, etc., Ins. Co.* v. *Gwyn's Adm'x,* 113 Va. 337, 74 S. E. 208.

This instruction, given in *McGowan* v. *Tayman*, 144 Va. 358, 132 S. E. 316, we approve (page 318):

"The court instructs the jury if they believe from the evidence that when defendant driving his automobile down Harrison street approaching the intersection of Harrison and Seventh streets he discovered the bicycle of the plaintiff moving rapidly down Seventh street not under control and that a sudden emergency was then presented to him of either going forward or stopping his car to avoid imminent collision, and that he undertook to speed up his car and thus avoid the danger, and that his action was such that a person of ordinary prudence might have done under a like situation, but that he failed to thus avoid the collision, he would not be guilty of negligence because another course might have been more judicious."

A defendant precipitated into an unexpected situation may not make the wisest choice. He is only required to do what a person of ordinary prudence should have done, and whether he uses reasonable care under the circumstances is ordinarily a question for the jury. *Lavenstein* v. *Maile, supra.*

These two assignments of error may be dealt with together. It is said that the court erred:

"1. In failing to sustain the plaintiff's motion to strike out the 1, 2, 4, 5, 6, and 18th paragraphs of the bill of particulars.

"2. The court erred in refusing to strike out the whole of the bill of particulars."

In argument it was urged:

"As previously pointed out, there are eighteen paragraphs of the bill of particulars, each charging either generally or with some degree of particularity an item of actionable negligence. These charges include practically every criminal offense under the Motor Vehicle Code other than that of driving while intoxicated. Some of these charges are of the most general nature, as evidenced by the first and fourth paragraphs, which may be taken as typical of the other charges. The first is an omnibus accusation of the reck-

less driving, and the fourth an equally broad charge of negligence. Under no system of pleading would either of these be sufficient to give a defendant any reasonable notice of the charge which he is called upon to defend."

Paragraphs 1 and 4, which are said to be typical, read:

"1. Driving the Packard car upon the highway recklessly, or at a speed, or in a manner so as to endanger or be likely to endanger the life, limb or property of any person. See section 2154(108) of the Virginia Motor Code."

"4. Failure to exercise ordinary care to avoid the collision."

■ Conceding that these paragraphs are too general to be of value, and conceding that all the other paragraphs objected to gave little information, others not objected to are not subject to this criticism. Indeed, no bill of particulars was necessary at all. The notice of motion for judgment itself put Otey on notice of the character of the claim which he was called upon to defend. It is there said:

" * * * you, wrongfully, negligently, carelessly, recklessly and unlawfully drove the said Packard sedan out of the old road at LaHue's corner into the new road immediately in front of the said Plymouth coupe, thereby directly and proximately causing, by your said negligence, a collision in which the said Lollie S. Fisher was almost instantly killed, and the said Lollie S. Fisher, as a direct and proximate result of your said negligence, then and there died, for which you are responsible in damages to her estate to the extent of $10,000.00. This in violation of the duty you owed to her."

Moreover, Otey's counterclaim shows that he thoroughly understood the situation. He could not have been misled.

Objections are urged to a number of the plaintiff's instructions.

■ Instruction No. 1 told the jury that all persons should drive at a reasonable and proper speed, and that a car driven upon a highway in such manner as to endanger life, liberty or property is driven recklessly. There is nothing to show that Otey drove at excessive speed, and for that

reason this might well have been omitted. It is possible that one at times may drive so as to endanger life without being guilty of reckless driving, but in view of the evidence in this case, the jury could not have been misled.

Instruction No. 2 told the jury that if Otey entered the Lee highway without looking when Blessing's car was dangerously near, he was guilty of negligence. This is true.

Instruction No. 3 told the jury that it was Otey's duty to come to a complete stop, to indicate by proper signal his purpose to make a left-hand turn and to keep a lookout for traffic flowing along the arterial highway. It further told the jury that if Otey did come to a full stop and gave no signal of his purpose to proceed, Blessing had the right to assume that he could proceed along the highway in safety. All of this is true.

Instruction No. 4 is in substance Instruction No. 3.

Instruction No. 5 told the jury that if Blessing drove to the left in an emergency created by Otey, without fault on his part, and that in so doing, he acted as a man of reasonable prudence might have done, he is not guilty of negligence. This also is true.

Only general objections are urged in Instruction No. 7.

Defendant's Instruction A told the jury that Blessing was guilty of contributory negligence as a matter of law, and that this negligence was imputable to plaintiff. It was properly rejected.

Objection is made to the form of the verdict in that it does not refer to the defendant's counterclaim. That verdict reads: "We, the jury, find a verdict in favor of the plaintiff and fix *his* damages at $5,000. W. E. Warden, Foreman." Plainly the jury intended to find against the defendant.

The trouble in this case is that Mr. Otey went upon the Lee highway without looking, and while he said that Blessing was running at a terrific rate of speed, yet by his own testimony it is plain that he did not see Blessing until at the moment of the accident. The facts are against him, and we find no reversible error in the record.

*Affirmed.*