# Richmond

ALICE S. F. MISTER, ET ALS. V. J. A. MISTER.

December 7, 1942.

Record No. 2584.

Present, Campbell, C. J., and Holt, Hudgins, Gregory, Browning and Eggleston, JJ.

The opinion states the case.

*Thomas H. Nottingham* and *Quinton G. Nottingham,* for the appellants.

*Charles M. Lankford, Jr.,* and *Mears & Mears,* for the appellee.

GREGORY, J., delivered the opinion of the court.

J. A. Mister and his wife, Alice Mister, were equal partners in the ownership and operation of a hotel at Cape Charles, Virginia. Differences arose between them, and the husband alleged that his wife verbally agreed to purchase his one-half interest in the partnership, including the real estate, at $7,000. She denied any such agreement. He instituted

suit to compel her to perform the contract. By way of defense, she produced an unrecorded deed made by him, conveying his one-half interest in the partnership and the real estate to her. He denied that it was his deed. An issue out of chancery was ordered and the jury were instructed to ascertain (1) if the deed were the valid deed of J. A. Mister, and (2) if not his deed, whether the parties had entered into the verbal contract alleged by J. A. Mister. The jury found that the deed was *not* the deed of J. A. Mister and that no contract, such as alleged, was entered into by the parties. The court approved the finding of the jury by its decree.

Mrs. Mister, being dissatisfied with the verdict and decree, has appealed, asserting that errors were committed in the trial before the jury.

Mr. Mister has not assigned cross-error to that part of the decree in which it was adjudged that he was not entitled to the enforcement of the alleged contract; therefore, that question needs no consideration on this appeal. The question for us to decide is whether or not the jury were warranted in finding that the purported deed conveying the one-half interest in the realty to Mrs. Mister was *not* a true and valid instrument. Was the finding of the jury on that issue supported by the evidence? We think it was.

The pleadings consisted of a bill, a demurrer, which was overruled, an answer and a replication. No objection was made to the answer or the insufficiency of the replication. The replication was brief and in this language: "For replication to said answer the plaintiff says that the matters and things in said answer alleged as defenses to the plaintiff's bill, are not true, and that the agreement and deed referred to in said answer are not the agreement and deed of your complainant."

At the trial, the complainant undertook to prove under the replication that (1) he did not sign the deed and (2) if he did sign the deed, his signature was procured by fraud. We are not now concerned with whether these defenses consistently could be relied upon under the replication, for both

sides have proceeded upon the theory that the replication was sufficient for that purpose. It is true the defendant at the trial objected to certain evidence that tended to show that Mister had signed the deed thinking he was signing insurance papers, but, prior to this objection Mister had testified, without objection, to the effect that he thought he signed certain insurance papers without reading them.

To this testimony of Mr. Mister the court inquired if counsel for the defendant wished to object and counsel stated then that they did not object. Later, counsel did object and the objection was overruled. However, from that point on through the trial there was no other objection to that line of testimony which tended to show that Mister had signed the deed by reason of a fraud perpetrated upon him. In fact, counsel for the defendants sought to prove that no fraud had been committed and asked for and were granted an instruction in which the jury were told under certain facts that plaintiff could not recover "unless the jury believes he was induced to sign same (the deed) by misrepresentations fraudulently made." Under these circumstances we think the defendant actively participated in the trial upon the theory that fraud could be relied upon under the replication, and, now it is too late for her to say that the complainant should not be permitted to say in one breath that he did not sign the deed, and, in another, that if he did sign it, his signature was procured by fraud.

The facts are very unusual. Mister and his wife, in March, 1938, became joint owners of certain real estate in Cape Charles. They decided to convert the property into a hotel and agreed that in the operation of the hotel they would be equal partners. After expending a large sum in improvement, they began their hotel business. They had placed two mortgages on the property to procure the needed funds for the improvement. Under the agreement, they had a settlement every day, when practical, and divided the profits after providing for the expenses.

In April, 1941, they disagreed and negotiations were carried on through their respective attorneys for the purchase

and sale of the business including the real estate, and several conferences were held. Mister claimed that he and his wife had arrived at a verbal agreement whereby she agreed to purchase his one-half interest for $7,000, and, she having refused to go through with the agreement, he, on April 29, 1941, filed a bill of complaint seeking the performance of the agreement.

Mrs. Mister filed an answer denying that she had entered into the alleged agreement and she averred that Mister had conveyed to her his one-half interest in the business, including the real estate, by deed bearing date July 26, 1939.

Mister then filed the replication already referred to, wherein he asserted that he did not sign the deed, but, if he did, his signature was procured by fraud.

The court, of its own motion and without objection from either side, ordered an issue out of chancery and impaneled a jury to ascertain whether or not the deed of Mister to his wife was a valid instrument; and, if not a true and valid instrument, then whether or not there was a contract between Mister and his wife whereby she agreed to buy his one-half interest in the business and realty.

On these issues, as previously indicated, the jury found that the deed was not valid, and that no contract existed between Mister and his wife for the sale and purchase of his one-half interest. The decree carried the finding of the jury into effect.

At the trial before the jury, the testimony disclosed that after the negotiations between Mister and his wife and their respective attorneys had been going on for some time, Mrs. Mister, for the first time produced the unrecorded deed in question and gave it to her attorney. He immediately asked her "why in the world haven't you told me about this deed before". She replied that it was with some other papers and had been overlooked.

The attorney, after the deed had been produced, immediately informed counsel for Mister and the deed was shown Mister. He said the deed was "a forgery or a fake one".

There was testimony of handwriting experts. Two testified that by comparison, they were of opinion that the name signed to the deed was written by Mister. On the other hand, another expert testified that by comparing the signature to the deed with the admitted signature of Mister to a bond, he was of the opinion that the signature to the deed was not that of Mister. This conflict, of course, was for the jury.

There was uncontradicted testimony that during the prior negotiations Mrs. Mister never claimed to have the deed, and that notwithstanding the deed, which, if valid, would have given her the entire interest in the business, she admitted that she and her husband settled and divided profits nearly every night for some 21 months after she had become the sole owner. This highly inconsistent conduct on her part evidently was very impressive on the minds of the jurors. One of them inquired of her why she had waited so long to record the deed and she replied, in effect, that she just did not think of it, "that is the only reason". Her unreasonable explanation of her failure promptly to make known her sole ownership of the property, and her subsequent inconsistent conduct in dividing profits with her husband for 21 months, were certainly consistent with Mister's testimony that he had made no deed to her. This conduct is not even discussed in the petition filed in this appeal.

Mister testified that he had signed certain papers which he thought were insurance papers; that he did not read them and that if his name was signed to the deed they "got my name to this (deed) they got it that way". He further testified that he did not think his wife "would put a fake deed on me".

In 1939, an accident had occurred at the hotel and Mister and his wife had no liability insurance. They felt the need of such insurance and procured it through Mr. Dickinson. Mister said he thought he signed these papers but later he was told by Dickinson that it was not necessary for him to have signed the insurance papers. The jury could have found that if he signed the deed, he did so at the instigation of

his wife under the belief that he was signing insurance papers to provide liability insurance against damage suits which might arise in connection with the operation of the hotel. Mister was an unlettered man. He had attended school for only three years. He had worked hard all of his life and by close living accumulated a creditable estate for one of his standing and opportunities. The evidence and the reasonable inferences that could be drawn therefrom were sufficient for the jury to find that the deed was signed by Mister under the fraudulent representations of his wife.

The issues which arose in this cause were such that a jury was better qualified to decide them than the court. We think the court wisely submitted them to the jury, and that under the evidence the jury was thoroughly justified in resolving the question of the validity of the deed against Mrs. Mister, and in resolving the existence of the verbal agreement for the sale of the one-half interest in the business against Mr. Mister.

Instructions one and three, offered by the plaintiff and granted by the court, were not properly framed and should not have been given, but the error was harmless. The jury was so right in its verdict and the other instructions so fully embraced the salient features of the case, that we conclude that a just result has been reached, irrespective of the objections to instructions one and three. The result reached places the parties in the respective positions they occupied before this controversy arose, each owning an undivided one-half interest in the property. The ends of justice are thus attained; therefore, the decree is affirmed.

*Affirmed.*