# Richmond

## Mercer Stillman and Berlo Vending Company, Etc.
## v. C. W. Williams.

October 11, 1943.

Record No. 2686.

Present, Campbell, C. J., and Hudgins, Gregory, Browning, Eggleston and Spratley, JJ.

The opinion states the case.

*Bowles, Anderson & Boyd*, for the plaintiffs in error.

*Allen & Allen*, for the defendant in error.

HUDGINS, J., delivered the opinion of the court.

This writ of error brings under review the record of the trial of an action instituted by C. W. Williams against Mercer Stillman and Berlo Vending Company to recover damages for personal injuries sustained in a collision between two automobiles. The jury returned a verdict for plaintiff in the sum of $3,000, on. which the trial court entered judgment.

While the petition of the plaintiffs in error, defendants in the court below, contains six assignments of error, the decisive question presented is whether the evidence, considered in the light most favorable to the plaintiff below, convicts him of contributory negligence.

The collision occurred on U. S. Route 460, about 7 miles east of Blackstone, at the intersection of this route with State Route 153. Route 460 runs approximately east and west. Route 153 leads from this route in a northeasterly direction at an angle. While Route 153 as such does not cross Route 460, a county road continues in a southwesterly direction producing an intersection of highways in the nature of the letter "X".

Williams, the plaintiff, was driving his Buick automobile eastwardly on Route 460 intending to make a left turn northeastwardly into State Route 153 and across the line of westbound traffic on Route 460. Stillman, one of the defendants, was driving a Ford automobile, loaded with candy, west on Route 460 from Petersburg towards Blackstone. The two vehicles collided head-on slightly to the left of the center of the highway, which is 22 feet wide at this point. The cars stopped front to front, bumper against bumper and headlights against headlights; as one witness said, "right jam together; could not have made a better job if you had driven them together."

Stillman was knocked unconscious by the force of the impact and remembered nothing that happened for some time prior to the accident. T. G. Kay, Stillman's brother-in-law and the only passenger in the Ford, was cleaning his finger nails and did not see the Buick car; in fact, he did not regain consciousness until he arrived in Petersburg.

There was some evidence tending to show that the weather was foggy, but plaintiff testified that "the visibility from Blackstone all the way was perfect."

Plaintiff's detailed account of the accident was as follows: "When I was 250 to 300 feet away I was warned by Mr. Bruce that I was coming to a very dangerous crossing, the worst he knew, and he made the remark about it as a matter of caution to me. I slowed down until I was possibly running twenty miles an hour. I approached the intersection, which is about 200 feet across; I looked in every direction as I entered the intersection, as I always do, and there was nothing on either road. I could see as far as the roads were open, which happens to be not very far, possibly 200 feet, or something like that, and there was nothing in sight anywhere. I looked through my mirror and made sure nothing (was) behind me. I was running between double lines; there was nothing in front or behind and there was nothing to my right. I looked in front twice and to my right twice and made sure there was nothing behind, and as I was exactly by the post

at the side, with half of my car in front and the other half behind, I made the turn, and just as I made the turn to go in, I looked down the road and saw something coming at a rate of speed which was very unusual. I knew I could not get through if he came on that way, and believing he would stop or slow down for the intersection, I turned my car to the right until I had it nearly exactly, as far as I could tell, straight in the road, and the car was still coming, and approached the intersection, which has later proved to be about eighty feet, and when I saw he would not stop I applied my brake and stopped my car, and almost in the same instant, I can hardly tell what, in a split second, his car crashed into mine. When it happened, I remember it crashed; I heard some noise; I heard groans; but I did not know anything for a little while."

The photographs, maps and other testimony clearly prove that, while the intersection is on the bulge of a slight curve, plaintiff, as he made the left turn, had an unobstructed view of the highway for several hundred yards to the east. As one of plaintiff's witnesses said: "Looking from where you turn to Spainville (on route 153), you can see a maximum of 400 yards to the east and I would say a minimum of 250 yards." Hence, plaintiff is mistaken when he states that he looked to the east as far as the highway was open before he made his turn and there was nothing in sight. Either he did not look at all, or he looked so hastily or so carelessly that he failed to see that which was clearly visible.

■ ■ Mr. Justice Spratley, in *Yellow Cab Co.* v. *Gulley*, 169 Va. 611, at 617, 194 S. E. 683, dealing with a similar situation, said: "The law requires the driver of a car to keep a proper lookout, in order that he may avail himself of what the lookout discloses to prevent injury to himself as well as to others. Keeping a lookout is without avail unless one utilizes the information thereby secured. One who keeps a lookout, and fails to take advantage of what it discloses, is as guilty of negligence as one who fails to keep a lookout. The result is the same."

The statement of a person who, with full knowledge that he is leaving a place of comparative safety and moving into a traffic lane, a place of potential danger, says that he looked twice and did not see an approaching car which was in plain sight, is incredible. See *Chesapeake, etc., R. Co.* v. *Barlow,* 155 Va. 863, 156 S. E. 397.

Plaintiff, on cross-examination, said: "I had made my final pass and realized all roads were clear and I turned to the left (no sense in looking to the right on 460) and I caught something coming, maybe 50 or maybe 75 feet away."

Plaintiff knew that he was approaching a dangerous intersection at which he intended to turn left. He made the left turn and, according to his testimony, before his car, traveling at 20 miles an hour, had moved four feet the Ford car was within 50 to 75 feet of him. He attempted to cut back to his side of the highway, but, as he straightened his car in the highway, the two cars collided.

The testimony of plaintiff and other witnesses reveals that the two cars were approaching each other from opposite directions, each on its proper side of the highway. If Stillman saw the Buick car approaching, he owed plaintiff no duty to reduce his speed below the maximum legal rate (then 55 miles per hour) until Williams, by proper signal, indicated his intention to make a left turn. A day or two after the accident Williams signed a written statement in which he said that he "did not give any arm or hand or any signals for a left turn." When testifying in his own behalf, he repudiated the statement but said that he could not remember whether or not he gave the signal for a left turn.

Michie's Code 1942, sec. 2154 (123) (b) gives the driver of a vehicle, within an intersection and making a left turn, the right of way over a vehicle approaching "but not having entered an intersection * * * , provided the driver of the vehicle turning left has given a plainly visible signal or intention to turn left * * * ."

Williams was not entitled to the right of way at the intersection because there is no evidence tending to show

that he gave the signal for a left turn. The two cars approached each other, defendant's car moving at a high speed—from 60 to 90 miles an hour—on its side of the highway, and plaintiff's car moving at 20 to 25 miles an hour near the center of the highway but on its side. If each driver had continued on his side of the highway, as each had a right to assume the other would do, there would have been no collision. But suddenly, without warning or signal, plaintiff turned left and drove his car 2 to 4 feet across the center line of the highway immediately in front of defendant's speeding car. A collision of the two cars was the inevitable result of plaintiff's action. Plaintiff's own evidence and the physical facts convict him of contributory negligence, which bars his recovery.

The judgment of the trial court is reversed, the verdict of the jury set aside and final judgment entered here for plaintiffs in error.

*Reversed and final judgment.*