# Richmond

## Virginia J. Voight, Adm'x, etc. v. Beulah M. Reber, Adm'x, etc.

January 12, 1948.

Record No. 3277.

Present, Gregory, Buchanan, Staples and Miller, JJ.

The opinion states the case.

*Charles B. Godwin, Jr., Mills E. Godwin, Jr.,* and *Marshall L. Bowden,* for the plaintiff in error.

*Rixey & Rixey* and *Robert W. Arnold, Jr.,* for the defendant in error.

BUCHANAN, J., delivered the opinion of the court.

Frederick A. Reber was instantly killed when a truck which he had been driving, and which was stopped on the road, was struck from behind by a car driven by C. M. Joyner, who was fatally injured in the collision and died a few hours later without regaining consciousness.

The administratrix of Reber sued the administratrix of Joyner for negligently causing the death of Reber.

The administratrix of Joyner filed a counter-claim against the administratrix of Reber for negligently causing the death of Joyner.

Reber was killed while at the rear of his truck, apparently fixing a tire. The case for the plaintiff was that the lights on the truck were burning; that the required flares had been set out by Reber and were burning; and that the cause of the accident was the negligence of Joyner in not keeping a proper lookout or not having his car under proper control so as to avoid running into the truck.

The defense asserted, and the basis of defendant's counter-claim, was that Reber was negligent in stopping his truck on the highway, and in failing to place flares about it as required by law. Code, 1942 (Michie), secs. 2154 (133), 2154 (133a).

A trial by jury resulted in a verdict for $15,000 in favor of the administratrix of Reber, upon which the judgment was entered to which this writ of error was allowed. The jury found against the administratrix of Joyner on her cross-claim.

The accident happened about 6:30 p.m., December 6, 1945, after dark, on State highway No. 460, about three miles west of Waverly in Sussex county. Route 460 at that point is a four-lane highway which runs east from Petersburg through Waverly toward Norfolk.

Earlier in the afternoon—between three-thirty and four o'clock—Reber had left Norfolk over Route 460 west-bound for Detroit, driving a large truck loaded with furniture. The truck was the tractor-trailer type with dual wheels at the rear of the trailer. At the time of the accident the truck was standing, or parked, headed east toward Norfolk, in the opposite direction from its original destination, and near to and parallel with its right-hand edge of the concrete in the southern or east-bound traffic lane. Reber was alone in the truck and there is no explanation of his changed course, other than an inference that it was due to mechanical trouble.

The road at the place of accident is straight and practically level. There is a slight rise in it some distance back and from that point it was slightly downgrade to the place of collision, but for a distance of four to five hundred yards back of the truck all of it could have been seen by the driver of an approaching vehicle. A witness for the plaintiff, driving east from Petersburg, arrived at the scene of the accident about an hour after it happened, and testified that he saw the truck at least a quarter of a mile before he got to it.

Mr. Joyner left Petersburg about five-thirty o'clock that

evening, driving a four-door Chevrolet automobile, going east toward Norfolk to his home in Zuni. At his right on the front seat was Mrs. Joyner, and on the rear seat were Mrs. Carr and Mrs. Lanier. The night was misty and foggy, and visibility was poor, although a witness for plaintiff testified that at a speed of fifty miles an hour he could see fairly well. It had been raining but was not at the time of the collision. Mrs. Joyner was badly hurt in the wreck. Mrs. Lanier fainted when the crash came. They testified that Mr. Joyner was driving around 25 miles an hour; that they were looking ahead but did not see the truck in the road, or any lights; that they met a car with blinding lights and then the crash came. Mrs. Lanier said, "We were just driving on down the road, and we were talking, and just prior to this accident it looked like an awful bright line (light), and the awful crash. It seemed it was right on us."

There was abundant and convincing evidence that there were lights burning on the truck and flares burning in the highway ample to give warning to approaching travelers exercising reasonable care.

A State trooper, who came from Petersburg, reached the scene a little more than thirty minutes after the accident, and testified that he saw this truck parked on the road four or five hundred yards before he got to it; that lights were burning on the back of the truck and parking lights on the front; that three flares were burning, one at the left rear corner of the truck, another was 20 yards back, in the ditch, and not burning (there was evidence that this one had been run over by an automobile, presumably Joyner's); and a third burning 38 yards back of the truck. In addition, an emergency light had been connected from the front to the rear of the truck, and was broken.

In all, thirteen witnesses for the plaintiff testified that lights were burning on the truck and flares were burning on the highway in or along the truck's lane of travel, front and rear. These included a witness who testified he passed the truck a short while before the accident and saw the driver putting out flares, at least three of which were then

lighted. They included, also, witnesses who testified they came from the same direction as the Joyner car, arrived at the scene of accident from immediately after the accident to an hour later, and saw the lights on the truck and the flares in the road from distances varying from a quarter of a mile to 100 yards. Even a witness for the defendant testified he saw the truck lights far enough back "to come with necessary caution so I would not run into it." "It may have been 100 or 150 yards."

The estimate of the number of lights burning on the rear of the truck ranged up to eight and the number of flares up to five, including the one that had been run over. The witnesses differed among themselves as to the number of flares, as would be expected because it was a terrible wreck and their natural and commendable concern was first for the dead and suffering.

The Joyner car struck the Reber truck head on, squarely from behind, with no evidence that its brakes were applied, or that it turned at all from its straight course. It bounced back about eight feet from the rear of the truck, and in that space was the body of Reber lying under the back of the truck on the right-hand side, his brains spattered on the rear of the truck. A jack handle was in his hand with the jack attached to it, or lying beside it. An extra tire was on the ground at the rear of the truck on the right. The lugs on the right rear wheel had not been tightened. The motor of the truck was running.

While there was a practically level shoulder on the truck's side of the road wide enough to accommodate it, there was evidence that it was muddy there that night, and dangerous to drive a loaded truck on it. A witness for the defendant, who drove the truck away from the place of accident, testified that it was a very heavy truck and he would not want to put it on that shoulder. It would have been difficult to use a jack on a shoulder of that kind.

In addition to the three occupants of the car, another witness for the defendant, who arrived immediately after the accident, testified there were no flares burning, but

there were some in the road which were damaged and not burning and he could not say whether lights were burning on the rear of the truck or not. He was bothered by the lights of a witness for plaintiff driving just behind him, who testified that he saw the lights burning on the truck and flares burning in the road. One other witness for defendant, who arrived sometime later, testified that the only flare he remembered seeing was one in front of the truck, but that he saw two red lights on the back of the truck, as if in the air and slowly moving away when he first saw them. This was the witness who testified, as referred to above, that he saw these lights far enough back to proceed with necessary caution.

The evidence warranted a conclusion by the jury that the Reber truck had stopped on the highway in an emergency "as the result of an accident or mechanical breakdown" (Code, section 2154 (133), *supra*); that the truck was well lighted and sufficient flares were placed and burning; that Reber was struck and killed just as he was completing the task of repairing the trouble.

It is not contended that the verdict was not supported by sufficient evidence. The three errors assigned are to the giving of instructions No. 1 and No. 2 for the plaintiff, and to the refusal to give instruction G for the defendant.

Instruction No. 1 told the jury it was the duty of Joyner "to observe a proper lookout, keep his car under proper control, and exercise reasonable care to avoid running into Reber and the Reber truck;" that these were continuing duties to be exercised when they would be reasonably effective; and that if he "failed in his duty in any particular as above set forth," and that was the sole proximate cause of the accident, they should find for the plaintiff.

The point made at the trial was that the word "proper" is "not a fair test," because it allows the jury to speculate on the degree of care to be exercised; that it should have stated the duty to be to observe an ordinary and reasonable lookout and to keep the car under ordinary and reasonable control.

■ The term "proper control" is the language of the statute (Code, section 2154(108),(b),(1)), and it was not error in this case to instruct the jury in that language. *Butler* v. *Greenwood*, 180 Va. 456, 464, 23 S. E. (2d) 217.

The court further explained the duty of the defendant by defendant's instruction H, which told the jury that if Joyner "was exercising such ordinary and reasonable care in maintaining a lookout ahead as an ordinary, careful and prudent person would have maintained under the same circumstances and conditions, then the deceased was not guilty of negligence in this regard."

With this explanation the wording of that part of the instruction was clearly not error.

The word "proper" used in the statute and in the instruction is not an absolute but a relative word. It means "appropriate" or "suitable." The instruction told the jury that it was defendant's duty to keep proper control and proper lookout; i. e., control and lookout appropriate to the existing conditions. It is not to be supposed that meant to the jury something different from reasonable control or reasonable lookout. Either expression furnishes practically the same standard to guide the jury in applying the evidence. This court has frequently used the same word in referring to the standard of care in negligence cases. See *Berlin* v. *Wall*, 122 Va. 425, 95 S. E. 394, L. R. A. 1918D, 161; *Whipple* v. *Booth*, 155 Va. 413, 416, 154 S. E. 545; *Keeler* v. *Baumgardner*, 161 Va. 507, 513, 171 S. E. 592; *Yellow Cab Co.* v. *Gulley*, 169 Va. 611, 617, 194 S. E. 683; *Ellett* v. *Carpenter*, 173 Va. 191, 198, 3 S. E. (2d) 370.

■ The defendant objects here, but apparently did not do so in the trial court, to the words in the concluding sentence of the instruction, "in any particular as above set forth." The instruction had previously stated the duties of defendant, and there is little chance that the jury could have understood the phrase to refer other than to the failure of the defendant in any of those particulars. It was not equivalent to telling the jury that the defendant was liable

for negligence "in the slightest degree," which was disapproved in *Yeary* v. *Holbrook*, 171 Va. 266, 198 S. E. 441.

Plaintiff's instruction No. 2 was as follows:

"The Court instructs the jury that even if you believe from the evidence that Mr. Reber was guilty of some negligence, yet if you further believe from the evidence that Mr. Joyner by the exercise of reasonable care should have seen the Reber truck, and thereafter by the exercise of reasonable care could have avoided the collision, and yet failed to do so, then you should find for the plantiff and assess her damages for the death of Mr. Reber."

The defendant now objects to this instruction on the ground that it is an erroneous statement of the last clear chance doctrine, in that, in effect, the words "in a position of peril" should have been added after the word "truck."

The trial judge certifies that before granting this instruction he asked counsel for defendant what objection they had to the form of the instruction; that no specific objection as to form was stated, and it was arranged that exceptions to instructions might be dictated after the jury retired.

Under this arrangement defendant's counsel stated his exception to be "that this instruction erroneously states the law of the last clear chance;" and there was no evidence in the case upon which to base it; "that the instruction as given tells the jury in effect that however negligent Reber might have been, all that it was necessary for him to show to obtain a recovery was that the defendant did not maintain a proper lookout." The precise point now relied on was not properly called to the attention of the trial court as required by Rule 22. See *Ross* v. *Schneider*, 181 Va. 931, 941, 27 S. E. (2d) 154.

But even if the point be regarded as properly made, the result is the same. It is perfectly true that under the doctrine of last clear chance, what the defendant actually saw, or should have seen, must have been the plaintiff's

position of peril. *Dobson-Peacock* v. *Curtis*, 166 Va. 550, 186 S. E. 13.

Under the evidence in this case it would have been to dilate on the obvious to tell the jury that if Joyner saw, or should have seen, the truck in front of him in his lane of travel, he still must have known, or be charged with knowledge, that it was in a perilous situation. If he saw the truck he could not escape the knowledge that a collision was bound to happen if he did not turn aside or reduce his speed. And this would be true, even on the theory that Mr. Joyner saw what the defendant's witness, Renn, testified that he saw ahead of him as he approached the wreck—little red lights about the size of a silver dollar—which he knew were "indicative of a truck," and which appeared to be moving slowly away when he first saw them. It seems very plain that Mr. Joyner did not see the truck at all. His three companions did not see it, and the fact that he did not apply his brakes or make any effort to turn aside is convincing that he did not see it.

The only real reason for the presence of the last clear chance doctrine in this case was with respect to the flares. From the plaintiff's evidence the jury could have concluded that they were not placed in the manner required by the statute—40 paces in front, 40 paces to the rear and one on the traffic side not closer than ten feet from the front or rear of the truck. If that was the case, the plaintiff was technically guilty of negligence, and if the jury believed that contributed to the accident, the plaintiff could not recover except for the doctrine of last clear chance, or proximate and remote cause. The plaintiff was entitled to the instruction on the theory that if the lights were sufficient so that Joyner, by the exercise of reasonable care, should have seen the truck in time, Reber's negligence in the placing of the flares would not bar recovery. This case is clearly to be distinguished by its facts from the case of *Harris Motor Lines* v. *Green*, 184 Va. 984, 37 S. E. (2d) 4, in which the owner of the stationary truck was not allowed the benefit of the doctrine because the gross

negligence of its driver at no time ever became remote, but was always immediate, and continued as a proximate cause down to the time of collision. See *Stuart* v. *Coates*, 186 Va. 227, 42 S. E. (2d) 311.

Instruction G, offered by the defendant and refused, was as follows:

"The Court instructs the jury that there is no presumption from the mere happening of the accident that the deceased, C. M. Joyner, was guilty of negligence which proximately caused or contributed to his injury, and that on the defendant's cross-claim the burden is upon the plaintiff to prove that the deceased, C. M. Joyner, was guilty of contributory negligence unless contributory negligence on the part of C. M. Joyner is disclosed by the defendant's evidence or can fairly be inferred from all of the circumstances."

The instruction states two separate propositions, both correct in themselves, but illogically arranged and, therefore, confusing.

The first part of the instruction had been adequately covered by defendant's instruction A, which told the jury that they could not infer from the happening of the accident that Joyner was negligent, but that the plaintiff must prove by a preponderance of the evidence that he was negligent and that his negligence was the proximate cause of the accident.

The second part of instruction G would have been confusing because it stated, as an independent duty of the plaintiff, what was in fact dependent upon the antecedent condition that the defendant had first proved the negligence of Reber. It required plaintiff to prove a defense without reference to defendant's prior duty to prove a case calling for such a defense.

Other instructions had told the jury that if both parties were guilty of negligence, proximately causing or contributing to the accident, neither could recover; that if Joyner's negligence was the sole proximate cause of the accident, which the burden was on the plaintiff to prove,

their verdict should be for the plaintiff, both on her claim and on the defendant's counter-claim; but that if Reber's negligence was the sole proximate cause, which the burden was on defendant to prove, they should find for Joyner's administratrix, both on her cross-claim and on the claim of the plaintiff.

We think there was no reversible error in refusing this instruction. Defendant's theories were fairly and fully presented to the jury by the nine instructions granted to her, and we conclude that the parties have had a fair trial on the merits and substantial justice has been reached.

The judgment complained of is, therefore,

*Affirmed.*