# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

## W. W. OLIVER AND JESSE JAMES ALLEN·V. GORDON FORSYTH.

March 13, 1950.

Record No. 3600.

Present, All the Justices.

The opinion states the case.

*Rixey & Rixey*, for the plaintiffs in error.

*Pilcher & Pilcher* and *Ashburn, Agelasto & Sellers*, for the defendant in error.

BUCHANAN, J., delivered the opinion of the court.

Forsyth, the plaintiff below, recovered a verdict and judgment for $2,000 against Oliver and Allen, the defendants below and plaintiffs in error here, for personal injuries received by him when an automobile he was driving collided with a truck driven by Allen and owned by Oliver.

The accident happened about 8:30 a. m., November 10, 1947, at the intersection of Virginia Beach boulevard (U. S. Route 58) and Witch Duck road, in Princess Anne county. The boulevard is a three-lane highway, each lane being eleven feet wide, running between Norfolk on the west and Virginia Beach on the east. The Witch Duck road runs north and south, intersecting the boulevard at right angles. Both roads are hard surfaced. There is a stop sign on the

Witch Duck road about ten feet north of the boulevard, requiring traffic on that road to stop before entering the boulevard.

Allen was driving a 1940 Ford farm truck south on the Witch Duck road. He stopped at the stop sign, with his front fender within approximately four feet of the north lane of the boulevard. Forsyth, the plaintiff, was driving his automobile on the boulevard going toward Virginia Beach, approaching the intersection from the west and in his right-hand lane. He was running, he said, approximately fifty miles an hour. He was familiar with the intersection and as he approached it he saw a group of colored people standing just east of the intersection in a triangle, made by the south edge of the boulevard and another road leading off from it on the south. They were waiting for a Virginia Beach bus. He estimated he was approximately 100 feet from the intersection when he took his foot off the accelerator and put it over to the brake pedal to slow down while he passed these people. He also testified that he saw the truck stopped at the intersection when he was approximately 100 feet away. There was traffic coming toward him from Virginia Beach, and as one of the cars went by the intersection the truck suddenly came out in front of him. He guessed he was 75 or 80 feet from the intersection at that time. He immediately applied his brakes and skidded into the truck. The skid marks extended 55 feet to the point of collision and those made by his right-hand wheels were approximately four inches from the south side of the road all the way. At the point of collision the skid marks turned south at about right angles and extended 15 feet into Witch Duck road. The car hit about midway of the truck and when they stopped the truck was in Witch Duck road south of the boulevard and the car was partly on the boulevard and partly in Witch Duck road headed south close to the truck. The collision occurred in the south lane of the boulevard.

A State trooper who investigated was of opinion the truck

had not entirely cleared the middle lane when it was struck. Allen thought the rear of his truck was about two feet into the middle lane.

Allen's testimony was that he stopped for two or three minutes before entering the boulevard and waited for several cars to pass, three or four from the Beach to his left and two or three from Norfolk to his right. He looked both ways, he said, and after all the cars had passed he looked again to his right and saw no car, then back to his left and pulled across at a speed of five or six miles an hour. He said that when he "got across to the next lane," meaning apparently the middle lane, he heard brakes squealing, and when he turned around the car was on him. He said the car was within five feet of him when he saw it and that when he was hit his front wheels were beyond the south edge of the boulevard.

The defendants do not question the sufficiency of the evidence to support the verdict, but admit that the issues. were for the jury. They make three assignments of error, the first of which is that it was reversible error to give plaintiff's Instruction A, which was in these words:

"The Court instructs the jury that if they believe from the evidence that the plaintiff, Gordon H. Forsyth was proceeding east on the Virginia Beach Boulevard and approaching its intersection with the Witch Duck road when Oliver's driver, Jessie Allen, had stopped the Oliver truck at such intersection, and that Allen failed to see this approaching automobile, then Allen was guilty of negligence, and if such negligence contributed to the collision, Oliver cannot recover on his cross claim against Forsyth."

This instruction told the jury that it was Allen's duty to see, not just to look with reasonable care. Allen admitted that he did not see the Forsyth car; hence the instruction was peremptory, taking away from the jury any question of reasonable care and telling them that as a matter of law Allen was guilty of negligence.

It was the specific duty of Allen to stop before entering the boulevard, made so by statute, Code, 1942 (Michie), sec. 2154 (132); Code, 1950, sec. 46-255, and called to his attention by the stop sign in front of him on the Witch Duck road. That he performed this duty is not disputed in the evidence. It was his general duty, upon stopping, to use reasonable care to maintain a lookout and not to drive across until in the exercise of reasonable care it appeared safe to do so. *Yellow Cab Co.* v. *Gulley*, 169 Va. 611, 617, 194 S. E. 683, 686; *Voight* v. *Reber*, 187 Va. 157, 164, 46 S. E. (2d) 15, 18-19; *Smith* v. *Clark*, 187 Va. 181, 46 S. E. (2d) 21; *Doss* v. *Rader*, 187 Va. 231, 46 S. E. (2d) 434.

The trial court instructed the jury in Instruction No. 1, given for the defendants, that after stopping, Allen "had a right to proceed under such circumstances that a reasonably prudent person so situated would have concluded that it was reasonably safe to do so, acting under the assumption that the drivers of oncoming cars would themselves obey the law and keep their cars under proper control."

*Smith* v. *Clark, supra*, was reversed for an instruction which told the jury that the law required the defendant before turning left from his direct lane of travel, "to see that said left-hand turn can be made in safety." 187 Va. at p. 186, 46 S. E. (2d) at p. 23. We held that the language of the statute, Code, 1942 (Michie), sec. 2154(122)(a), on which the instruction was based, should be interpreted "to mean that it is incumbent upon the driver to use reasonable and ordinary care under the circumstances to see that such movement can be made safely;" that an instruction using the words of the statute should be qualified with appropriate language to make clear that the law did not impose upon the driver the absolute duty to negotiate the turn without mishap, or of insuring the safety of his turn. 187 Va. at p. 190, 46 S. E. (2d) at p. 25.

In addition to his duty to stop, Allen had the duty also to look. As said in *Otey* v. *Blessing*, 170 Va. 542, 548, 197 S. E. 409, 411, "To stop and not to look is inexcusable and

inexplainable." But the duty is to look with reasonable care, not an absolute duty to discover by looking, unless the thing to be looked for is in such plain view that looking with reasonable care was bound to have discovered it. Here the instruction placed on Allen the absolute duty to see; that is, even though he looked with reasonable care, he was guilty of negligence if he failed to see the approaching car, at whatever distance away the jury could conclude it might have been when he looked. It made him an insurer of the safety of his crossing and placed on him a greater burden than the law authorized. It was, therefore, an incorrect statement of the law.

The plaintiff argues, however, that the instruction related only to the counter-claim filed by the defendant, Oliver, against Forsyth, and was not intended to apply to the negligence of Allen with respect to the claim of the plaintiff, Forsyth, against Allen and Oliver. The instruction does not carry that limitation. It told the jury in plain terms that if Allen failed to see then he was guilty of negligence. It added that if that negligence contributed to the collision, then Oliver could not recover on his cross-claim; but that did not exclude the further result that if Allen was negligent, as the jury was told by the instruction, the plaintiff had proved his case and put the defendants to their defense.

The plaintiff argues further that if the instruction was wrong, the error was harmless because under the evidence no other verdict would have been proper. The conclusion is sound if the premise is correct. It was said in *Talley v. Drumheller*, 143 Va. 439, 450, 130 S. E. 385, 388, that if, upon a view of the whole evidence, no other verdict could have properly been found, even under proper instructions, the verdict will not be set aside.

Here the specific question is whether the instruction, although wrong as a general statement of duty, was right under the evidence in this case. The instruction told the jury that if plaintiff was approaching the intersection when

Allen "had stopped the Oliver truck," and Allen failed to see the approaching car (when he was stopped, as the jury could interpret the instruction), then Allen was guilty of negligence. This would be true only if when Allen stopped and looked the approaching car was where he would have been bound to see it and so close that a reasonable man would have concluded it was not safe to cross. If the evidence on that point was such that reasonable men could differ in the conclusion to be reached from it, then that question was for the jury. If reasonable men could not disagree about it, then it was not error to give the instruction in this case. *Yellow Cab Co.* v. *Gulley, supra; Meade* v. *Saunders,* 151 Va. 636, 642, 144 S. E. 711, 712; *Stillman* v. *Williams,* 181 Va. 863, 867, 27 S. E. (2d) 186, 187; *Cooke* v. *Griggs,* 183 Va. 851, 856, 33 S. E. (2d) 764, 766.

Allen testified that after he had stopped at the intersection and before starting across he looked both ways. Nobody testified that he did not. Allen's statement to the State trooper a short time after the accident was that he looked both ways, thought the road was clear and went ahead. The trooper testified that if Allen had gone out into the road he could have seen half a mile, at least, but he did not know whether trees and bushes in the adjoining lot shortened vision from farther back. Another witness for plaintiff testified that Allen could have seen back toward Norfolk half a mile or a mile, but he was on the opposite side of the road from Allen and his statement was apparently a guess. After the accident Oliver, one of the defendants, stopped his car, so he testified, in approximately the same position that Allen had stopped the truck. Oliver said that from that position he could not see to the west, from which direction plaintiff's car came, beyond 175 yards.

If Allen's testimony that his front wheels were off the hard surface on the south when he was hit is accepted, then he had traveled more than 37 feet when he was struck. Cars were passing both ways just before he started out. When the last one passed, so Allen testified, he looked to

his right and saw no car coming. He then looked back to his left, from which direction approaching cars would be traveling in the first lane he would cross. Plaintiff said cars were coming from that direction.

The plaintiff testified that the road was perfectly straight but he also testified he was approximately 100 feet from the intersection when he saw the truck standing there, and that he was 75 or 80 feet from the intersection when Allen drove out in front of him from behind a car that was going west. If the truck had traveled 37 feet or more before being hit, and the jury accepted as true the statements of the parties as to their respective speeds, it is obvious that the plaintiff traveled some distance without seeing that Allen was driving across the road. Cf. *Ellett* v. *Carpenter*, 173 Va. 191, 198, 3 S. E. (2d) 370, 373.

In *Doss* v. *Rader*, 187 Va. 231, 237-8, 46 S. E. (2d) 434, 436, a case involving a collision at an intersection, we said:

"With respect to each other the drivers of automobiles are required to exercise ordinary care to avoid a collision at an intersection, and to that end each should keep a proper lookout for other vehicles. What is a proper lookout in a given situation, and whether it includes the duty to listen as well as to look, are for the jury. There is no imperative rule of law requiring one lawfully using the public highways to be constantly looking and listening to ascertain whether another automobile is approaching."

In view of existing conditions, including the possibilities of vision, the time involved in looking, the passing cars, and the speeds of the two vehicles, as the jury may have determined all these elements to be, we think it should have been left to the jury whether Allen looked with reasonable care, and that it was prejudicial error to instruct that he was guilty of negligence in failing to see the approaching car when he had stopped. Cf. *Angell* v. *McDaniel*, 165 Va. 1, 181 S. E. 370.

The defendants' second assignment is to the refusal of the court to give their Instruction 4, as follows:

"The Court instructs the jury that if you believe from the evidence that the defendant's truck entered and started across the intersection at a time when its position and course, should have been discovered by Gordon Forsyth by the exercise of reasonable care for (*sic*) Forsyth to have slowed up or stopped or changed the course of his vehicle and thus avoided the accident, then you should find for the defendant Oliver and assess his damages."

The court was right in rejecting it. It would have relieved Allen of the effect of his negligence even though the jury found that such negligence existed and continued as a proximate cause of the collision. It was not only an incorrect statement of the last clear chance principle, but the principle itself was inapplicable under the evidence. Allen was not in a position of peril, an essential of the doctrine, until he drove into the plaintiff's lane, and there was then no last clear chance available to the plaintiff to prevent the collision by exercising ordinary care. *Lanier v. Johnson, ante,* p. 1, 55 S. E. (2d) 442, and cases cited.

The third and final assignment of error is that the verdict was excessive. Since the case must be reversed for the error pointed out in plaintiff's Instruction A, it is not appropriate to discuss this assignment.

The judgment below is reversed and the case is remanded for a new trial.

*Reversed and remanded.*

SPRATLEY, J., dissenting.

I find myself unable to agree with the majority that the judgment in this case should be reversed because of an erroneous instruction to the jury.

Conceding that instruction "A" should not have been framed in the form given, I think the error was, nevertheless, harmless in view of the circumstances. It seems to me that the jury, as reasonable and fair-minded men, could have reached no other conclusion than that the collision

resulted from the failure of the defendant, Allen, to observe a reasonable lookout. If the jury had found for the defendants, the verdict should have been set aside because Allen, the driver of the truck, was guilty of negligence as a matter of law.

The uncontradicted evidence is than Forsyth was proceeding in an easterly direction along a three-lane arterial highway, approximately thirty-three feet wide. Allen was approaching this highway from the north. In compliance with the highway sign, he stopped his truck before entering the highway at a distance within four feet of the hard surface, where he says he remained for two or three minutes. At that point, his view in the direction from which the car of Forsyth was coming was unobstructed for at least a distance of one hundred and seventy-five yards, that is, five hundred and twenty-five feet. Several witnesses testified that the distance was greater.

Allen does not claim that his view of the Forsyth car was obscured by traffic approaching from his left or from his right. The car of Forsyth was in plain view. If Allen had looked with reasonable care, he was bound to have discovered it. Yet, he says that after looking first to his right and seeing no car, and then looking to his left, he started across the road at five or six miles an hour, and did not see the car of Forsyth until he was within five feet of it. If he looked so hastily or so carelessly that he failed to see it, he was guilty of negligence. That he did not exercise reasonable care is shown by his statement. "I did not see the car, *and I had plenty of chance to look up the road,* and which I did look up the road and there was no car, whatever coming." (Italics added.)

In *Moore* v. *Vick*, 181 Va. 157, 24 S. E. (2d) 429, under circumstances much similar to those here, we said at page 160:

"Admitting, for the sake of argument, that defendant stopped before entering the intersection, by her own testimony she admitted that she had a clear view of the highway

for a distance of one hundred and fifty yards to her right. This being true, it is inconceivable why she failed to see the approaching car of plaintiff. In our opinion, there is but one conclusion to be drawn, and that is, she failed to look when looking would have been effective."

In *Stillman* v. *Williams*, 181 Va. 863, 27 S. E. (2d) 186, in reversing a judgment for the plaintiff, Mr. Justice Hudgins, now Chief Justice, said on page 866:

"Plaintiff is mistaken when he states that he looked to the east as far as the highway was open before he made his turn, and there was nothing in sight. Either he did not look at all, or he looked so hastily or so carelessly that he failed to see that which was clearly visible."

And on page 867, "The statement of a person, who, with full knowledge that he is leaving a place 'of comparable safety and moving into a traffic lane, a place of potential danger, says that he looked twice and did not see the approaching car which was in plain sight, is incredible. See *Chesapeake, etc., R. Co.* v. *Barlow*, 155 Va. 863, 156 S. E. 397."

In *Temple* v. *Moses*, 175 Va. 320, 8 S. E. (2d) 262, at page 331, we said:

"Common sense, reasonable caution and prudence dictate that the driver of the stopped vehicle, before entering the main artery of travel, shall look, and not enter into the public highway without seeing that such movement can be made with safety. He is under a duty to see what is in plain sight."

In *Yellow Cab Co.* v. *Gulley*, 169 Va. 611, 194 S. E. 683, we said on page 617:

"Keeping a lookout is without avail unless one utilizes the information thereby secured. One who keeps a lookout, and fails to take advantage of what it discloses is as guilty of negligence as one who fails to keep a lookout. The result is the same."

In *Brown* v. *Lee*, 167 Va. 284, 189 S. E. 339, this court said on page 285:

"The land is fairly level, and from the crossing the truck could be seen for at least 300 feet, its driver could have seen the coupe when it was 75 feet from the intersection, beyond which his view was obstructed by woodland.

"Incredible as it may seem, he tells us that he never saw this coupe until he struck it, and for this he offers no excuse. * * * The negligence of Lee is too plain for argument."

In *Johnson* v. *Harrison*, 161 Va. 804, 172 S. E. 259, at page 808, Justice Gregory said:

"For the plaintiff to stand upon his right of way and fail or refuse to look for another automobile which is using the intersecting road, when such automobile is in plain view and approaching at a dangerous speed, is the clearest kind of concurring negligence."

Also see *Garrison* v. *Burns*, 178 Va. 1, 16 S. E. (2d) 306; *Penoso* v. *D. Pender Grocery Co.*, 177 Va. 245, 13 S. E. (2d) 310; and *Nicholson* v. *Garland*, 156 Va. 745, 158 S. E. 901.

It has been frequently held by this court that a verdict of a jury will not be set aside where it is such that no other verdict could have been properly found, even under proper instructions. *Mister* v. *Mister*, 180 Va. 364, 23 S. E. (2d) 152; and *Talley* v. *Drumheller*, 143 Va. 439, 130 S. E. 385.

The facts in this case have been submitted to two juries, both of which rendered verdicts against the defendants.

The State Farm Mutual Automobile Insurance Company, owner of the automobile driven by Forsyth, in its separate action against the defendants recovered $474.73, property damage to its automobile. Nevertheless, in the present case, the defendant filed a cross-claim for $250, damage to the truck driven by Allen.

Instructions were given relating to negligence, contributory negligence, and concurrent negligence. Instruction "A" related to the right of the defendants to recover on their cross-claim. It defined Allen's duty before the defendants could recover. The duty of Allen to Forsyth, insofar as Forsyth's recovery against the defendants was concerned,

was defined by other instructions, to which no assignment of error has been made. For this reason, I think the harmless effect of instruction "A" is the more apparent.

It is inconceivable to me why Allen failed to see the approaching car. Neither of the defendants give a reason. The majority opinion shows none. There is but one conclusion to be drawn, and that is he failed to look when looking would have been effective. I would, therefore, affirm the judgment of the trial court.

HUDGINS, C. J., concurs in this dissent.